Argued at Pendleton May 4, affirmed June 15, 1920.

# NAULT *v.* PALMER.

## (190 Pac. 346.)

**Judgment—Waters—Water Rights—Priorities—Binding on Parties to Litigation.**

1. A decree fixing the rights and priorities of parties to a litigation over water rights did not affect other users of the waters of the river and its tributaries who were not parties to the suit, so that it was competent for the water board subsequently, on proper petition, to determine the rights and priorities of all users of the water system.

**Waters—Water-master—Parties—Adjudication of Water Rights.**

2. Where, under the present status of adjudication of certain water rights, the only dispute that can arise concerns the administration of a prior decree regulating priorities, the Supreme Court, plaintiff having voluntarily dismissed the suit as to the water-master, the official in charge of administration of the prior decree, can do nothing which would affect him.

**Injunction—Officers—Enforcing Void Statute may be Restrained.**

3. The general rule is that a court of equity is without jurisdiction to restrain by injunction the enforcement of crminal proceedings, the exception being that, where public officers are undertaking to enforce a void statute, injunction will lie against them, though not against the state.

[As to power of equity to enjoin criminal prosecution, see notes in 1 Ann. Cas. 121; 19 Ann. Cas. 459; Ann. Cas. 1916C, 1153.]

**Waters—Right to Use—Cannot Benefit Junior User—Injury to Intermediate User.**

4. One having priority in the use of water is entitled to use it so that its highest duty will be effected, and can employ it to the best advantage of the tract to which it is appurtenant, but cannot postpone the use of water at its best on such tract in favor of a separate parcel junior to another which is junior to the first, and, having used it on the tract junior to all, take it up and give a belated use on the first tract to the injury of the intermediate user.

**Waters—Water-master—Priorities and Privileges must be Preserved.**

5. It is the duty of a water-master, under Sections 6617, 6618, L. O. L., to preserve the priorities and the quantities of irrigation water consistently with the highest duty of water as applied to all concerned.

**Waters—Courts—Authority—Rule of Evidence—Penalties.**

6. The Circuit Court, in suit concerning water rights and priorities in certain streams, was without authority to establish an

arbitrary rule of evidence or to prescribe penalties for future violations of priorities by declaring a voluntary diversion to a tract to which the water was not appurtenant would be conclusive evidence it was not needed by a prior appropriator for fifteen days.

**Appeal and Error—No Appeal from Circuit Court to Circuit Court.**

7. There can be no appeal from the Circuit Court to the Circuit Court, especially to the same Circuit Court.

From Baker: GUSTAV ANDERSON, Judge.

In Banc.

Narrating that he is the owner of certain lands in Baker County, which we shall call the Nault place, and that the defendants Palmer and Denham are the owners of another tract designated as the McCulloch place, the plaintiff says in his complaint that in a suit between Palmer and Denham as plaintiffs and himself and others as defendants in the Circuit Court for Baker County, brought for the purpose of determining the priorities among the users and appropriators of the waters of Sutton Creek and its confluent, Ebell Creek, on March 28, 1912, a decree was duly rendered giving to Palmer and Denham the first right, amounting to 100 inches of water, to be used upon the McCulloch place, which right dated from an appropriation in 1872 and 1873, and a second permit for use to the Nault place, and another called the Richardson and Gilliam place, in the proportion of 35 inches to Nault and 65 inches to Richardson and Gilliam, but otherwise equal in right and time as between the last two farms. The complaint recited the full decree in detail, unnecessary to repeat; but it is sufficient to say that it confined the appropriation to each tract to that particular plot, and prescribed as to each one in effect that if the appropriation to any tract should be diverted to another at a time when adverse appropria-

tions were not satisfied, it should be conclusive evidence that the water so diverted was not required on the premises to which it was applicable for fifteen days thereafter, and during that time should become a part of the water subject to the other priorities as adjudicated in the decree.

It seems from the pleadings and evidence that the Nault holding is highest up the stream system in question and the McCulloch farm is lowest, and between them there intervenes what is called the Gossett place, now owned by Palmer and Denham, the water right appurtenant to which is junior to that of Nault. The complaint charges that Palmer and Denham plowed up the ditches originally constructed and in use at the time of that decree, whereby water was conveyed to the McCulloch place, and changed the point of their diversion so as to make the water available for irrigating not only the McCulloch place, but also the Gossett place, and says, in substance, that they postponed the irrigation of the McCulloch place, although it needed water, used the water on the Gossett place and afterwards availed themselves of their priority over Nault and irrigated the McCulloch place to the exclusion of his right, to his great damage. The plaintiff avers that, inasmuch as they had diverted the water from the McCulloch ranch to the Gossett place when his appropriation was not satisfied, he assumed, as he had a right to do, that this was a violation of the decree and conclusive evidence of that fact, giving him the right to use the water for fifteen days, and hence he opened his gates and was irrigating his place when the defendants caused his arrest in pursuance of a conspiracy between Palmer and Denham as appropriators and McKinney as water-master to deprive him of the use of the water.

He also says that immediately upon his arrest by
McKinney, as water-master, the defendants, against
his consent and over his protest, closed his head-
gates and prevented him from using the water, and
that it is their intention to cause his arrest when-
ever he attempts to irrigate his land. He prays for
damages, that the defendants be prohibited from
using their appropriation for any other than the
McCulloch place, that they be restrained from in-
creasing the irrigable area of land upon that farm,
that the arrest of the plaintiff be enjoined, and for
other general relief.

The defendants deny the whole complaint, except
the ownership of Palmer and Denham in the land,
water, and water rights described therein. They re-
iterate that ownership and aver that upon a peti-
tion filed by the water users of Powder River and
its affluents, among which are Sutton Creek and
Ebell Creek, the state water board surveyed the
river and its tributaries, ascertained the rights of
the users of those waters, and found and determined
the rights of the plaintiff and others, among them
Palmer and Denham, incorporating the same in its
findings, which in due time were reported to the
Circuit Court, which rendered a decree accordingly
on May 18, 1918. The answer says that Nault par-
ticipated in that proceeding, was notified of the time
and place of the filing of the findings and order of
determination, and was given opportunity to enter
objections to the same, but that no objections what-
ever were filed; that the decree of the Circuit Court
upon the board's findings has not been appealed
from; that prior to the times mentioned in the com-
plaint the water board had appointed the defendant
McKinney water-master for the district in which the

premises here involved are situated; and that in his endeavor to distribute the water in conformity with the decree McKinney was compelled to arrest the plaintiff for interfering with the waters and the distribution thereof according to the decree. Palmer and Denham claim that the plaintiff's diversion of the water damages them by depriving them of its use for irrigating their growing crops, and that by reason of his ignoring the decree they have incurred loss of time and expenditure of money, to their further damage. They pray that his suit be dismissed, and that Palmer and Denham have judgment against him for costs and disbursements.

The reply admits all the answer up to and including the decree of the Circuit Court on the findings of the water board, but denies all other allegations of that pleading. The plaintiff further alleges in his final pleading that the decree in the original suit was made long prior to any determination by the board of relative rights in the water; that all the parties presented their claim based upon that decree; and that nothing was intended in that proceeding to supersede the former adjudication. At the beginning of the hearing of this suit the plaintiff dismissed the same as to the defendant McKinney, the water-master. After testimony had been taken and argument had, the Circuit Court entered a decree dismissing the suit, and the plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. A. A. Smith* and *Messrs. Smith & Smith,* with oral arguments by *Mr. A. A. Smith* and *Mr. William Smith.*

For respondents there was a brief over the names of *Messrs. McColloch & McColloch,* and *Mr. W. H. Strayer,* with an oral argument by *Messrs. McColloch & McColloch.*

BURNETT, J.—1. From the record it appears that the rights and priorities of the parties were fixed and determined in the original decree. This, however, could not effect other users of the waters of Powder River and its tributaries who did not participate in that suit. The decree was binding only upon the parties to it. It was competent, therefore, for the water board on proper petition, as is admitted, to examine and determine the rights and priorities of all users of that water system, including the creeks mentioned. The water rights and priorities of the immediate parties to this suit were preserved, not impaired, but declared, by the ensuing decree of the Circuit Court. From that point on it became a question of the administration of those rights. We cannot give to either of the users of the water any right separate or different from that which the decree has declared. Nothing is gained by piling decree upon decree.

So far as the users themselves are concerned, one means for the enforcement of the decree is found in the provisions of Section 414, L. O. L., reading thus:

"A decree requiring a party to make a conveyance, transfer, release, acquittance, or other like act within a period therein specified shall, if such party do not comply therewith, be deemed and taken to be equivalent thereto. The court or judge thereof may enforce an order or decree in a suit, other than for the payment of money, by punishing the party refusing or neglecting to comply therewith, as for a contempt."

Another method of executing the terms of the decree is through the operations of the water-master as hereinafter noted. The part of the water code embodied in Chapter VI of Title xliii, L. O. L., treating of the administration of water rights, provides substantially that the water board shall cause a survey of a stream system to be made upon the petition of individuals interested, and that, after giving a proper notice and hearing all parties concerned, it shall make a report to the Circuit Court, setting forth the rights and priorities of all users of water involved. Notice of the filing of such report is provided for and opportunity is given to be heard in support of or objection to the report, with the final result of a decree rendered upon the report, either affirming or modifying the same; and that decree is a determination of the rights and priorities of all parties to the proceedings the same as any other adjudication of that tribunal. For the administration of the rights thus perpetuated, a water-master is provided, whose duty it is to see that the water is used in accordance with the court's determination. His duties are summed up in Sections 6617 and 6618, L. O. L., as they stood at the times narrated in the pleadings herein. They are here set down:

"Sec. 6617. It shall be the duty of the said water-masters to divide the water of the natural streams or other sources of supply of his district among the several ditches and reservoirs, taking water therefrom, according to the rights of each respectively, in whole or in part, and to shut and fasten, or cause to be shut and fastened, the headgates of ditches, and shall regulate or cause to be regulated, the controlling works of reservoirs, in time of scarcity of water, as may be necessary by reason of the rights existing from said streams of his district. The water-master shall have authority to regulate the distribution of

water among the various users under any partner-ship ditch or reservoir, where rights have been determined in accordance with existing decrees. Whenever, in the pursuance of his duties, the water-master regulates a headgate to a ditch or the con-trolling works of reservoirs, it shall be his duty to attach to such headgate or controlling works, a writ-ten notice properly dated and signed, setting forth the fact that such headgate or controlling works has been properly regulated and is wholly under his con-trol, and such notice shall be a legal notice to all parties interested in the division and distribution of the water of such ditch or reservoir. It shall be the duty of the district attorney to appear for, or on behalf of the division superintendent or any water-master in any case which may arise in the pursuance of the official duties of any such officer within the jurisdiction of said district attorney.

"Sec. 6618. Said water-master shall, as near as may be, divide, regulate and control the use of the water of all streams within his district by such closing or partially closing of the headgates as will prevent the waste of water, or its use in excess of the volume to which the owner of the right is lawfully entitled, and any person who may be injured by the action of any water-master, shall have the right to appeal to the Circuit Court for an injunction. Such in-junction shall only be issued in case it can be shown at the hearing that the water-master has failed to carry into effect the order of the board of control or decrees of the court determining the existing rights to the use of water."

2. It is true enough that under the latter section injunction will lie against the water-master if he fails to carry into effect the decree of the court in determining existing rights to the use of the water. It is true also that the adverse owners of water rights would be proper parties to such a suit as far as their rights were involved. But the essential party to such proceeding for injunction would be

96 Or.—35

the water-master. Conceding, without deciding, that the pleadings here show malfeasance by that officer, yet, as the plaintiff has voluntarily dismissed the suit as to him, no relief can be awarded against him in this litigation. As stated, the rights of Palmer and Denham and of the plaintiff have been adjudicated by the decrees already rendered, beyond our power of change. Under the present status of adjudication, the only dispute that can arise concerns the administration of the decree; and, not having before us the only official in charge of that administration, we cannot do anything which would affect him.

Complaint is made in a general way that the plaintiff has been arrested, and that the defendants propose to arrest him as often as he opens his headgate. In *Hall* v. *Dunn*, 52 Or. 475 (97 Pac. 811, 25 L. R. A. (N. S.) 193), it is said:

"The rule is quite general that a court of equity has no jurisdiction by injunction to restrain the enforcement of criminal proceedings."

3. The exception to that rule is also pointed out in the same case, and can be stated generally to be that, where public officers are undertaking to enforce a void statute, injunction will lie, not against the state, but against them, because they do not in fact represent the state, for it has not sanctioned any such proceeding; the supposed statute being void and constituting no genuine utterance of the lawmaking power: See, also, *Denton* v. *McDonald*, 104 Tex. 206 (135 S. W. 1148, 34 L. R. A. (N. S.) 453). Here no attack is made upon the validity of the legislation under which the water-master is proceeding. The regularity of the decree which he is supposed to enforce is confessed. It is plain, therefore, that the case made by the plaintiff is not within the

exception to the general rule that equity will not undertake to control criminal proceedings. The guilt or innocence of a criminal charge can be successfully established by the ordinary course of the law.

4, 5. Anyone having priority in the use of water is entitled so to use it that its highest duty will be effected. He can employ it to the best advantage of the tract to which it is appurtenant. He cannot be compelled to use it in advance of such a situation. On the other hand, he cannot postpone the use of water at its best upon that tract in favor of a separate parcel junior to another which in turn is junior to the first tract, and then, after having used it on the tract junior to all, take it up and give belated use on the first tract, to the injury of the intermediate user. This would be a perversion of the order of priority, constituting a legal waste; in other words, it would be wasting the senior appropriation as against the immediate junior and in favor of one junior to all others. It is the duty of the watermaster under the statute to preserve the priorities and the quantities consistently with the highest duty of water, as applied to all concerned.

6. Great stress is laid by the plaintiff on the provisions of the original decree declaring that the voluntary diversion of water to a tract to which it was not appurtenant would be conclusive evidence that the water was not needed by the prior appropriator for fifteen days thereafter, and it is upon this assumed state of facts that the plaintiff predicates his right to open his headgate. So far as that is concerned, the Circuit Court in the original suit was called upon to determine the rights and priorities of the parties respecting the streams there involved.

It had no authority to establish an arbitrary rule of evidence or to prescribe penalties for future violation of priorities. Those matters were not pertinent to or included in the issues in that case.

7. The only questions that arise on the record as here disclosed are those of administration of the previous decree. The administrator, namely, the water-master, is not before us. As to the parties who remain in court, we cannot make any adjudication additional to or different from those already rendered by a court confessedly having jurisdiction of the parties and of the subject matter. The same was true of the Circuit Court as to this suit, for there can be no appeal from the Circuit Court to the Circuit Court, and especially to the same Circuit Court.

Under the circumstances, the trial court was right in dismissing the suit, and its order will be affirmed, without prejudice to the rights of any party to operate by injunction or other proper procedure against the water-master or any party to the decree as to the administration thereof. Neither party will recover costs or disbursements from the other here or in the Circuit Court.　　　　　　AFFIRMED.

Justice JOHNS was present at the hearing but did not participate in the decision of this case.