Argued at Pendleton May 3, affirmed June 21, 1921.

# NORTH POWDER MILLING & MERCANTILE CO. *v.* THE PACIFIC FRUIT EXPRESS CO.

## (198 Pac. 893.)

**Waters and Watercourses — Occasional Diversion of Water Under Temporary License Held not to Support Easement or Claim by Adverse User.**

1. Where defendant used the surplus water leaving plaintiff's ditch by a spillway, the fact that occasionally, under a temporary license, it obstructed the ditch below the spillway in order to divert water into the spillway would not support a claim of an easement in the ditch or a claim by adverse user.

**Waters and Watercourses—Where Decree Did not Adjudicate Ownership of Ditch Water-master Held Without Authority to Permit Taking of Water from Ditch.**

2. Where in a proceeding to adjudicate water rights the finding of the board of control and Circuit Court that L. appropriated waters by diverting them through a ditch into plaintiff's mill-race and then diverting them from the mill-race was unsupported by L.'s claim or testimony, and the decree merely adjudged that L. was the owner of 2½ second-feet of water without pretending to settle the ownership of any particular ditch or of the right to use it, conceding that the board had jurisdiction of such questions, the water-master had no authority to authorize defendant, L.'s successor in title, to take water from plaintiff's ditch.

**Waters and Watercourses—Water-master Held not Necessary Party to Suit to Enjoin Taking of Water from Plaintiff's Ditch.**

3. Where the decree in a proceeding to establish water rights did not pretend to settle the ownership of any particular ditch or the right to use the same, the water-master, who was claimed to have permitted defendant to take water from plaintiff's ditch, was not a necessary party to a suit to enjoin such taking.

**Injunction—Interference With Ditch and Appliances Under Claim of Right Enjoined, Though There had Been Only One Occasion Causing Serious Injury.**

4. Where defendant claimed the right to enter plaintiff's ditch and tamper with its appliances, not only at present but in the future, for the purpose of taking water therefrom, and had on several occasions interfered with such appliances, plaintiff was entitled to an injunction, though only one of such interferences had occasioned serious injury; the others being calculated to produce some injury.

From Union: J. W. KNOWLES, Judge.

In Banc.

The plaintiff is a corporation engaged in operating a flouring-mill at North Powder in Union County, Oregon. The defendant is a corporation engaged in the cutting, storing and shipping of ice from a pond above and contiguous to the mill owned and operated by the plaintiff. This suit is brought by the plaintiff to enjoin the defendant from taking water from a ditch owned by the former and passing near defendant's ice-pond. The complaint alleges:

"That plaintiff is the owner of an adjudicated water right of and to the waters of North Powder River to the extent of 25 second-feet thereof for power purposes, with a date of priority of the year 1870, which water right has been and now is used for the generation of power for the operation of a flour mill owned by plaintiff which is situated in the northeast quarter of the southeast quarter of section 22, township 6, south of range 39, east of the Willamette Meridian in Union County, State of Oregon.

"That plaintiff's predecessors in interest, in the year 1870, for the purpose of conducting the water so adjudicated, from the said North Powder River to the said mill, built and constructed dams at the point of diversion, a ditch from the said dam to a point near the mill site, and a mill-race, all for the purpose of generating power to operate said mill; and said 25 second-feet of water was conveyed through said ditch and said mill-race in the year 1870 for the purpose of generating said power as aforesaid, and has been so conducted and so used each and every year thereafter and is now being so used in the manufacture of flour and other mill products for a beneficial purpose.

"That during certain seasons of the year, when there is an abundant rainfall and when the melting snow runs down said river, the flow of water in said plaintiff's ditch is greater than 25 second-feet. To prevent this surplus from flowing on into the said mill-race at these seasons of the year, plaintiff con-

structed at a convenient place along the said ditch a. tap and box so regulated and sized that no more than the adjudicated amount of water can run on down into said mill-race; and near the said tap and box plaintiff has constructed and continuously maintained a waste-gate whereby and through which the surplus during the said seasons, over and above the 25 second-feet aforementioned, runs off and enters a waste ditch through which the said surplus returns to the channel of said river.

"The plaintiff herein has been at all times mentioned herein and is now the sole owner of all the ditches, rights of way for ditches, taps, boxes, gates, mill-race, mill, dam and all things connected therewith and hereinbefore mentioned.

"That plaintiff conducts and operates a milling business producing a brand of flour and mill products of excellent quality and good price, which flour and mill products bring a good price in the market and give to plaintiff a large profit. That, however, the quality of the flour and mill products so produced is dependent upon an unbroken flow of 25 second-feet of water for power purposes and if the continuity or volume of said flow is interrupted or decreased or increased, said interruption, increase or decrease changes the speed of the machinery used in the said milling operations and so causes an inferior brand of flour and mill products to be produced, which inferior brand of flour and products when placed upon the market by plaintiff brings a lower price than the best products and injures the reputation of the products produced by plaintiff. The extent of the injury thus caused is unknown to plaintiff, is irreparable and is impossible to estimate in money.

"For many years prior hereto, defendant and its predecessors in interest have repeatedly and without leave, license or permission of plaintiff, gone upon plaintiff's ditch and mill-race and interfered with the same and interfered with the adjustment of the tap and box and waste-gate as hereinbefore described and have by this said interference diminished and otherwise interfered with the continuity and volume of the

flow of water of 25 second-feet as hereinbefore de-
scribed and have thus caused damage to plaintiff as
alleged in paragraph VII of this complaint. That
defendant now threatens to continue to do the same
with the avowed purpose of causing plaintiff damage
as alleged and causing plaintiff to shut down and
cease to operate its said mill and defendant did on the
twenty-fifth day of October, 1919, so go upon said
ditch and so interfere with said tap, box and waste-
gate as alleged and threatens to continue to do so
in the future to plaintiff's irreparable and inestimable
damage unless restrained by an order of this honor-
able court.''

The defendant answered, denying plaintiff's owner-
ship of the ditch in question and alleging that plain-
tiff's predecessors in interest and those of the de-
fendant jointly maintained the ditch since 1886. For
a further defense the following matter is pleaded in
bar:

''That in the year 1886 Andrew O. Lun appropri-
ated the waters of North Powder River for ice-making
purposes by diverting the same into and through the
mill-race of plaintiff and diverting from said mill-race
into and through a ditch to the ice plant of said de-
fendant; that said water was at said date and has
ever since been diverted from the channel of said
river into a reservoir and thence into said ice plant,
and that plaintiff's predecessor, Andrew O. Lun,
thereby became and was entitled to the use of said
waters for said purpose.

''That in the year 1912 a proceeding was held
before the board of control of the State of Oregon
[renamed State Water Board, Laws 1913, Chapter
82] for water district No. 2, entitled, 'In the matter
of the determination of the relative rights of the
various claimants to the waters of North Powder
River and its tributaries, a tributary of Powder
River,' and in said proceeding various claims were
made for the right to use the waters of said North
Powder River and various contests filed and in and by

the order of said board of control [state water board] dated January 22, 1912, the said Andrew O. Lun was adjudged to be the owner of a water right of and to the waters of North Powder River for ice-making purposes with the date of priority of the year 1886 to the extent of 2.5 second-feet thereof, the same to be taken by diverting the same through the ditch and mill-race of North Powder Milling & Mercantile Company, and from thence diverting same into and through a ditch to the ice-plant of the said Andrew O. Lun.

"That thereafter appeals were prosecuted from said order of said board of control [state water board] to the Circuit Court of the State of Oregon for Union County and from said Circuit Court to the Supreme Court of the State of Oregon, and that the final decree in said cause was thereafter entered, affirming the decision of the said board of control [state water board] with respect to the said water right of said Andrew O. Lun, and that the said Andrew O. Lun thereby became the owner of an adjudicated water right of 2.5 second-feet of the waters of North Powder River for ice-making purposes diverted in the manner hereinbefore described.

"That thereafter defendant by conveyance from said Andrew O. Lun became the owner of said water right and of said ice plant and ice-making business, and defendant has ever since been and is now entitled to said adjudicated water right hereinbefore described.

"That plaintiff was a party to said proceeding before said board of control [state water board] and was and is bound by the said determination as finally settled by the Supreme Court of the State of Oregon, and that said decree entered in the Circuit Court of the State of Oregon for the County of Union, pursuant to the mandate of the Supreme Court of the State of Oregon, was and is a complete settlement of the matters now sought to be litigated by plaintiff and was and is a bar to this suit."

The defendant further pleads that plaintiff and defendant are the joint owners of the ditch in question and that defendant lawfully diverted its share of the water by direction and permission of the water-master of the water district, and not otherwise.

The new matter in the answer was put in issue by appropriate denials. The case was heard, findings were made and a decree was entered in accordance with plaintiff's contention; from which decree the defendant appeals.                                    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Crawford & Eakin, Mr. A. C. Spencer* and *Mr. John F. Reilly,* with oral arguments by *Mr. Crawford* and *Mr. Eakin.*

For respondent there was a brief over the name of *Messrs. McCulloch & McCulloch,* with an oral argument by *Mr. Frank C. McCulloch.*

McBRIDE, J.—1. Without going into a detailed recital of the evidence, it suffices to say that it fails to show satisfactorily that defendant's predecessors in interest assisted in the construction or maintenance of the ditch in question, or that there was ever any agreement between them, or defendant, and plaintiff's predecessors in interest that defendant should use the ditch for the diversion of the 2.5 second-feet of water which defendant's predecessor had appropriated for the purpose of filling his ice-pond. The evidence does indicate that surplus water escaping through the spillway near the ice-pond was habitually conducted by defendant into its pond for the purpose of filling it, and that when the mill was not running defendant sometimes but not frequently obstructed the ditch below the spillway and secured thereby a large flow

of the water in the ditch to be diverted through the spillway into its ice-pond; but this diversion was never made under a claim of right and never rose above the dignity of a mere temporary license to use that method of filling the pond with water which was useless to the plaintiff. The evidence is not sufficiently strong to establish a claim of an easement in the ditch or a claim by adverse user. The Circuit Court so found, and we think the finding is justified. In fact, no easement, license or adverse user is formally pleaded in the answer.

2. The defendant claims joint ownership by reason of joint construction and maintenance, and an adjudicated right in the ditch by reason of the findings of the water board and the decree rendered by the Circuit Court in the adjudication of the water rights pertaining to the North Powder River. The decision of this question is rendered difficult not only on account of the important legal points involved in the construction of certain provisions of the water code, but on account of the obscurity of the findings and decree of the court as to what rights were adjudicated to Lun, defendant's predecessor in interest. The intent of the findings or decree can perhaps be best understood by reading the same in the light of the claims made before the water board by the respective parties. Lun's statement of claim and his testimony in support thereof are as follows:

"Q. Do you claim a right to any of the waters of —— or any of its tributaries?

"A. Yes.

"Q. State whether water is taken from the main stream, or a tributary thereof. If from a tributary, give its name.

"A. Water is taken from the main stream.

"Q. What is the nature of the use on which your claim is based?

"A. Irrigation, domestic, stock water and for natural ice-making.

"Q. Upon what is your claim based?

"A. Appropriation, diversion and beneficial use, and riparian ownership.

"Q. State the date of initiation of the water right which you claim to own.

"A. 1870, by predecessor.

"Q. State the date when water was first used for irrigation or other beneficial purpose.

"A. 1870, by N. Tarter, a predecessor.

"Q. State the means of utilizing such water. If diverted through a ditch, give its name.

"A. By dams, ditches, laterals, and a ditch known as Harlan ditch, from which ditch the southeast quarter of the northwest quarter of section twenty-seven, south of range thirty-nine east of the Willamette Meridian has been irrigated from the year 1884 until present time, and I also irrigate from the mill-race.

"Q. Are you the owner of said ditch or works? If not, state your proportionate interest therein.

"A. I own two thirds of the Harlan ditch and all of a ditch three feet wide and two feet deep taken out of the main stream in the southeast quarter of section twenty-eight, in the year 1891.

"Q. State the date of beginning construction.

"A. Ditch, 1870; ice-pond, 1886."

Upon this there appears a finding by the board, which finding was adopted by the court, as follows:

"That in the year 1886, said defendant [claimant] Andrew Lun appropriated the waters of said North Powder River for ice-making purposes, by diverting the same into and through a ditch and thence into the mill-race of the North Powder Milling & Mercantile Company, and diversion from said mill-race into and through a ditch to the ice-pond of said claimant; that said water is also diverted from the channel of said river into a reservoir and thence into said ice-pond."

The decree of the Circuit Court in that adjudication reads thus:

"That said findings and modified order and determination of the said board of control [state water board] are here now made the findings and order of determination of the relative rights of all claimants of, in and to the waters of North Powder River and its tributaries, and for the purpose of definitely fixing and settling the amount of water to which each of said users is entitled with the date of priority, including the ditch through which the same is diverted and the lands upon which the same has been used, the tabulated statement made by the said board of control [state water board] and filed and submitted to the court as a part of their order of determination, and as modified by this court and the said Supreme Court is here now adopted and approved and is made part of this decree as follows * * "

The tabulation referred to, so far as it concerned Lun's right, is as follows:

"Name and P. O. address of appropriator: *Andrew O. Lun.*
Date of rel. priority: *1886.*
Amt. Sec. Ft., *2.50.*
No. ac.: *None.*
Use: *Ice-making Oct. 15 to Mar. 15.*
Name of ditch and interest: *Small ditches.*
Description of land or place of use: ...... *Ice-ponds.*"

The finding, as will be noted, is entirely outside of anything in Lun's claim in respect to the manner of his obtaining water for his ice-pond. In his claim it is asserted that he takes the water for his ice-pond from the main stream. In stating his means of utilizing his appropriation he says that it is done by "dams, ditches, laterals and a ditch known as the Harlan ditch," and adds, "and I also irrigate from the mill-race." In answer concerning his ownership

of ditches he states: "I own two thirds of the Harlan ditch and all of a ditch three feet wide and two feet deep taken out of the main stream in the southeast quarter of section 28 in 1891." There is no ditch specified in Lun's claim or testimony taking water from the North Powder River and thence into the mill-race of the North Powder Milling and Mercantile Company. How this finding came to be made, in view of the proof, is a mystery; and there is no finding as to Lun's right or interest in the mill-race or the nature or extent of his use of it. His only claim is comprised in the one sentence, "I also irrigate from the mill-race," a declaration not at variance with plaintiff's contention that Lun used the waste water from its spillway when it turned the same through the spillway in reducing the amount flowing to its mill, with the exception of temporary incursions mostly since the adjudication above mentioned, and to which the plaintiff is now objecting.

It will be noted also that in his claim and proof before the water board Lun did not assert any ownership in the mill company's ditch, and although he was asked to state his interest in the ditches by which he utilized his appropriation he expressly enumerated the Harlan ditch and another ditch not connected with the matters here in controversy. Nor is there in the decree itself any adjudication that defendant, Lun's successor, has any interest in the mill ditch or any right to its use for carrying his appropriation of water to the vicinity of its ice-pond. We have merely a finding not based upon claim or substantiated by testimony.

A finding not followed by a decree to put it into effect is like faith without works, "dead being alone." The decree establishes only the order regarding Lun's

priority to an appropriation of 2.5 second-feet of water for ice-making purposes, the same to be used through small ditches. It does not pretend to settle the ownership of any particular ditch or right to use the same. Indeed, it may well be doubted whether the jurisdiction of the water board goes to the extent of authorizing it to settle controversies as to the ownership of ditches: *Oppenlander* v. *Ditch Co.,* 18 Colo. 142 (31 Pac. 854); *Putnam* v. *Curtis,* 7 Colo. App. 437 (43 Pac. 1056); *Hallett* v. *Carpenter,* 37 Colo. 30 (86 Pac. 317). But, conceding that it has such jurisdiction, it has not so decreed in the instance now being considered, and it is unnecessary to follow that branch of the discussion.

Since no right to use plaintiff's ditch was adjudicated to defendant by the decree establishing the order of the water board, it follows that the watermaster had no right to permit defendant to take water from plaintiff's ditch at any time. Indeed, that official testifies that he did not go beyond what would appear to be his legitimate authority, namely, to permit defendant to take its 2.5 second-feet of water while the mill was closed down, without designating the means by which it might be conveyed. However, it is evident that his permission under the circumstances could reasonably be construed only as a permission to take it from plaintiff's ditch.

3. The water-master was not a necessary party to this suit. Counsel for defendant cite *Nault* v. *Palmer,* 96 Or. 538 (190 Pac. 346), as being favorable to their contention in this regard, but no question as to the ownership of ditches or the effect of an adjudication upon that subject was there involved. The decree in that case was definite and certain as to the amount of each appropriation and as to the channels through which the same should be applied, and the only conten-

tion was that the water-master had permitted the defendants to use their appropriation in such a manner and at such a time as virtually to destroy the priority given plaintiff by the decree. Here the decree gave defendant no right to use the mill-race as a conduit for the water required to fill its ice-pond, and the water-master was without authority to go beyond the decree and give defendant authority to enter upon a ditch owned exclusively by plaintiff and interfere with plaintiff's appliances therein for the purpose of satisfying defendant's appropriation of the waters of the river. If done against plaintiff's wishes, it would be a trespass not only on the part of the defendant but also the officer who assumed to give it permission to invade plaintiff's ditch.

It is in evidence that before the completion of the new dam erected by plaintiff, defendant conducted some water from the river by means of a ditch built by Lun, making the diversion immediately below and near plaintiff's ditch, and that since that time a pumping plant for the purpose of filling the ice-pond by forcing water from plaintiff's tail-race has been installed and used by defendant. From aught that appears in the testimony, both of these methods are still available. It does not stand to reason that if Lun and defendant were claiming that they had a legal right to use plaintiff's ditch for the purpose of filling their pond, they would ever have resorted to other and perhaps more expensive methods. If they had believed that they had the legal right to employ the inexpensive process of gravity to bring their water to the pond, they would not have installed an expensive pumping engine and gone to the additional expense of an engineer to run it. The claim of an easement in the ditch is evidently an afterthought, prob-

ably suggested by the inconsiderate findings which somehow crept into the record of the water board.

4. It is contended that the nature of the injury complained of is so small and the alleged interferences so infrequent that they may be redressed by an action for damages, and that a resort to equity is unnecessary. It is true that while several interferences with plaintiff's appliances are in evidence, there is but one which is shown to have occasioned very serious injury, although in the nature of things each of them was calculated to produce some injury by interrupting the manufacture of flour and causing a deterioration of quality where it was manufactured under conditions produced by an insufficient supply of water. But the defendant claims the right to enter plaintiff's ditch and tamper with its appliances, not only at present but in the future, which in our view is a claim of right to commit continuing and successive trespasses on plaintiff's property. Under such circumstances it is hornbook law that the aid of equity may be invoked.

The decree of the Circuit Court is affirmed.

AFFIRMED.