Argued at Pendleton May 5, reversed July 29, rehearing denied September 23, 1924.

## JOHN NORWOOD v. EASTERN OREGON LAND CO.

(227 Pac. 1111.)

**Waters and Watercourses—Riparian Right Diminished by Adverse User.**

1. Any diversion of water by an upper owner is adverse, and therefore necessarily impairs right of lower riparian owner to have stream flow its natural way, and riparian right may be diminished by such adverse user for ten years.

**Waters and Watercourses—One cannot be Both Appropriator and Holder of Riparian Rights.**

2. One cannot simultaneously be both an appropriator and a holder of riparian rights, and when a riparian owner becomes an appropriator of a fixed quantity of water as against other riparian owners he abandons his character as a riparian owner.

**Waters and Watercourses—Riparian Rights Inseparably Annexed to Lands Washed by Stream.**

3. Riparian rights are purely local, inseparably annexed to lands washed by stream at place where they border on its waters, and cannot be divorced, and water board had no authority to order

---

1. Nature of riparian rights and lands to which they attach, see notes in 9 Ann. Cas. 1235; Ann. Cas. 1913E, 709; Ann. Cas. 1915C, 1026.

Right of prior appropriators of water, see note in 30 L. R. A. 365.

See 40 Cyc., pp. 561, 396, 697, 702, 714 (1925 Anno.), 720, 738.

transfer of right from lands below holdings of an appropriator of water to lands above appropriator.

**Waters and Watercourses—Decree Transferring Riparian Rights from One Land to Another Without Effect.**

4. Order of water board, undertaking to transfer riparian right to overflow waters and continuous flow to another point up stream, was impossible, amounting to an unauthorized license to become an appropriator of water at a new point of diversion, and such an order, though restricting amount of water that could be used as riparian owner, and naming amount that could be used, was not an adjudication of right to use such water on other land above land of complaining appropriator, a party to proceeding.

**Waters and Watercourses—Use of Water Held Continued Trespass, Which Equity may Enjoin.**

5. Acts of land company in pretending to rely on a void order of water board in using water to which it was entitled as a lower riparian owner on another tract of land above an upper adverse appropriator of water amounted to a continued trespass, which equity was authorized to enjoin, under Section 5707, Or. L.

**Waters and Watercourses—One Acquiring Lands Before Desert Land Act Acquired Common-law Riparian Rights.**

6. One acquiring title to land on stream prior to passage of Desert Land Act of March 3, 1877 (U. S. Comp. Stats., §§ 4674–4678), took title with common-law riparian rights recognized in state.

**Waters and Watercourses—Statute Held not to Subtract from Existing Riparian Rights.**

7. Section 5764, Or. L., did not add to or subtract from scope of existing riparian rights at time of its passage, such as a right having its origin prior to Desert Land Act of March 3, 1877 (U. S. Comp. Stats., §§ 4674–4678).

From Malheur: DALTON BIGGS, Judge.

In Banc.

REVERSED.

For appellant there was a brief and oral argument by *Mr. George E. Davis.*

For respondent there was a brief over the names of *Messrs. Veazie & Veazie* and *Mr. R. W. Swagler,* with an oral argument by *Mr. J. C. Veazie.*

BURNETT, J.—In this proceeding the plaintiff sues the Eastern Oregon Land Company together

with its agent, and the water-master of Malheur County to prevent them from diverting the water of Willow Creek at a point above the diversion of an appropriation which he made of the water of that stream to irrigate his own land with a priority of 1871 for part, and with a priority of 1873 for the remainder. The litigation proceeded without the agent or water-master as they did not appear or answer.

The plaintiff says that the defendant herein is the owner of large bodies of land both above and below the plaintiff's holdings on the stream and by an adjudication of the Circuit Court for Malheur County on June 6, 1916, the company was allowed from the overflow waters of Willow Creek by priority of 1867, to irrigate certain of the lands of the company lying downstream from those of the plaintiff and that by virtue of an *ex parte* order granted by the State Water Board of the State of Oregon on April 28, 1916, and a pretended order of the State Board made and entered December 7, 1917, the company undertook to divert water at a point above the plaintiff's lands to the prejudice of the plaintiff's appropriation, pretending to have obtained a transfer of the right granted by the decree to the defendant from its lower lands to those above the plaintiff's holdings. The contention of the plaintiff is that the transfer was void, without authority and impossible of execution. Hence he prays for an order restraining the defendants from taking out water above his lands and that the transfer order be set aside.

The complaint is traversed in important particulars by the answer, which pleading narrates a decree, being the same one referred to in the complaint awarding to the defendant certain water rights for the irrigation of the land lying below that of the

plaintiff and subsequently the order of the water board transferring that right to other land of the defendant lying upstream from the plaintiff's tract. The reply in turn controverts the answer. The Circuit Court rendered a decree dismissing the suit and the plaintiff has appealed.

Fundamentally both parties rely upon the former decree adjudicating the rights to the water of Willow Creek. The cynosural question is the proper construction of that decree. In the tabulation of rights set forth in the decree we find that the Eastern Oregon Land Co. with a date of relative priority of 1867 is allowed 3.65 second-feet of the waters of Willow Creek for the irrigation of 292.02 acres described by subdivisions in the table. In the same tabulation the plaintiff is allowed from the waters of Willow Creek through certain ditches 1.25 second-feet for the irrigation of 100 acres with the priority of the year 1871 and 3.06 second-feet for the irrigation of 244.08 acres with the priority of 1873. Further, after reciting the ownership by the Eastern Oregon Land Co. of certain lands including the 292.02 acres already mentioned, the decree goes on to state

"That the title to all of the lands owned by said Eastern Oregon Land Co. in the watershed of said Willow Creek, with the exception of certain lands in Section 16 and Section 36 acquired from the State, was acquired by said company through and by virtue of an Act of Congress approved February 25, 1867, and the Act of the Legislative Assembly of the State of Oregon approved October 20, 1868, and therefore the title to such lands passed out of the Government prior to the act of Congress approved March 3, 1877.

"That said Eastern Oregon Land Company is entitled to have irrigated the 292.02 acres of land on account of some having been heretofore overflowed in the amount and to the extent hereinbefore stated,

subject to the rights since acquired by adverse user, and the like, antagonistic to such rights; and water for said 292.02 acres shall be diverted from Willow Creek under the supervision of the Water Master, in such manner as he may direct.''

An examination of the claims for water, filed in the adjudication proceedings already mentioned resulting in the decree from which the above excerpt is taken, shows that as to the 292.02 acres mentioned the company asserts title to the water only as the riparian owner of the land through which it flows, entitled to enjoy the annual overflow from the stream upon the land described, claiming that it had never made any appropriation of the water by diverting it from the natural channel of the stream, had never constructed any diversion works such as dams and ditches, but relied solely upon the action of nature in overflowing the banks of the stream and flooding its lands in the spring when the snows melted and the rains came. The act of Congress referred to in the decree is that of March 3, 1877, usually designated as the ''Desert Land Act,'' which provides that all surplus water, aside from the actual appropriation in use for reclamation of desert land under the act,

''together with the water of all lakes, rivers and other sources of water supply upon the public lands and not navigable, shall remain and be held free for the appropriation and use of the public for irrigation, mining and manufacturing purposes, subject to existing rights * * '' Acts of Congress 1877, Chap. 107, 19 Stats. U. S. 377 (6 Fed. Stats. Ann. 392, U. S. Comp. Stats. 1901, p. 1548).

In *Hough* v. *Porter*, 51 Or. 318, 404 (98 Pac. 1083, 1097), this statute was thus construed by this court:

''The language used in this act was clearly intended to change the rule respecting the right of riparians

to the use of water for irrigation, mining and power purposes; but, as in the last case cited, it has its limits. It does not go so far as to affect the rights originally giving rise to the doctrine of riparian rights; that is, for domestic use, including the watering of domestic animals and such stock as may be essential to the sustenance of the owners of lands adjacent to the streams or other bodies of water."

1. Having acquired its land prior to the passage of the Desert Land Act, which legislation itself was enacted "subject to existing rights," the company took title with all the rights of a riparian owner and, notwithstanding the provisions of the Desert Land Act, was entitled to maintain its standing as a riparian owner and it has undertaken to do so in the adjudication resulting in the decree of the Circuit Court of June 6, 1916. This right, however, was liable to be infringed and proportionally diminished by adverse user, continuing for the period of ten years. In the language of the defendant's brief:

"any diversion of water by an upper owner is adverse, because such diversion necessarily diminishes the volume of the water flowing in the stream, and therefore necessarily impairs the right of the lower riparian owner to have the stream flow its natural way."

2. The riparian rights of the defendant company, as such, date back to the year 1867 when it and its predecessors in title acquired the ownership of the land. The decree however, recognizes the plaintiff as an appropriator with priority of 1871 and 1873. The plaintiff is thus a tenant in severalty of the amount of water appropriated by him while the defendant is a *quasi* tenant in common of the waters with other riparian proprietors. The two parties are not in the same category so far as the right to

use water is concerned. Of course, there is nothing to prevent a riparian owner from becoming an appropriator of the water, even upon his own land; but when he becomes an appropriator diverting a certain fixed quantity of the water to his own use as against other riparian owners, he abandons his character as a riparian owner and assumes that of an appropriator on the principle that a man cannot at one and the same time hold property in severalty and in common with others. It has been often decided that one cannot simultaneously be both an appropriator and a holder of riparian rights: *Caviness* v. *La Grande Irr. Co.,* 60 Or. 410 (119 Pac. 731). According to the record resulting in the decree under consideration, the company has never assumed any other status than that of a riparian owner. A fair construction of the decree shows that the plaintiff began to appropriate water out of Willow Creek in 1871 and 1873. The moment he began that diversion as an appropriator, he raised the hostile flag and invaded the riparian rights of the company. At that time a cause of suit by injunction arose in favor of the company to prevent the plaintiff from diverting any of the water and to that extent preventing it from flowing past the lower premises of the company as it was accustomed to flow in the course of nature. The adverse use of the water by the plaintiff since 1871–1873 has ripened into an indefeasible right superior to the riparian right of the defendant.

In *Weiss* v. *Oregon Iron & Steel Co.,* 13 Or. 496 (11 Pac. 255), the riparian proprietor sought to enjoin the defendant who had lands farther up the stream from diverting the Tualatin River into a lake for manufacturing purposes. The defendant contended that equity had no jurisdiction to enjoin the

diversion but the court speaking by Mr. Chief Justice LORD said:

"Nor do we think the objection to the exercise of the jurisdiction well taken. Mr. High says: 'A riparian proprietor owning to the center of a stream is entitled to the aid of equity to prevent a diversion of the waters from their natural channel. Nor does the neglect of complainants to use or appropriate the water-power, or the fact that they have as yet sustained but small pecuniary damage, or that defendants would be subjected to heavy expense if compelled to restore the water to its original channel, present such objections as would warrant a court of equity in refusing the relief.' (High on Injunctions, § 795, and authorities cited.)"

3. The hostile initiation of the plaintiff's appropriation and its continuance from 1871 and 1873 to the time of the adjudication gives color and sanction to the language of the decree that at the time of its rendition the right of the Eastern Oregon Land Co. to irrigate the 292.02 acres of land was on account of the same having been heretofore overflowed "subject to the rights since acquired by adverse user and the like antagonistic to such rights." In other words, whatever the form of the right of the Eastern Oregon Land Co. recognized by the decree of this court, whether as a riparian owner or as an appropriator of 3.65 inches of water per second, it was subject to the rights of appropriators who had been taking water adversely for ten years. The right of the company to irrigate its land was "on account of the same having been overflowed." The source of supply of the company is in that overflow and the decree undertook to limit even that to the quantity above stated. According to the record, all that the company has ever had or claimed to hold is a riparian right. Such a

right is appurtenant to the land. In *Jones* v. *Conn*, 39 Or. 30, 34 (64 Pac. 855, 65 Pac. 1068, 87 Am. St. Rep. 634, 54 L. R. A. 630, 53 Cent. L. J. 128), Mr. Chief Justice ROBERT S. BEAN used the following language:

"It is often said that a riparian proprietor has a right, inseparably annexed to the soil, to have the water of a stream flow down to his land as it is wont to run, undiminished in quantity and unimpaired in quality";

In *Brown* v. *Baker*, 39 Or. 66 (65 Pac. 799, 68 Pac. 193), Mr. Justice MOORE said:

"The water of a non-navigable stream is an incident to the soil through which it flows."

Under the claims preferred, the Circuit Court in its adjudication had no authority to change the nature of the defendant company's holding from that of a riparian proprietor to that of an appropriator, and did not undertake to do so. It declared a riparian right and subjected· it to adverse claims which had impaired and superseded it by hostile. use for ten years. Although it limited its quantity to 3.65 inches per second for the purpose of preventing waste of water, it did not impart to it movability. Riparian rights are purely local, inseparably annexed to the lands washed by the stream at the place where they border on its waters. Such rights cannot be divorced from the adjacent lands. A riparian owner who takes out water for the irrigation of nonriparian land becomes an appropriator and to that extent surrenders his status as such riparian owner.

4. The right of the defendant company being thus localized, not only by the law of nature, but also by the decree of the court, the water board had no authority to order a transfer of the right from the lands

below the holdings of the plaintiff to the defendant's lands above those of the plaintiff. Neither the decree nor the subsequent order of the board could make water run uphill. In the very nature of things, the order of the board undertaking to transfer a localized riparian right to another point upstream was as impracticable and impossible as one lifting himself by his boot-straps. It amounted to an unauthorized license to the defendant to become an appropriator of water at a new point of diversion. Nature will continue to serve its riparian rights on the downstream land as of yore while it will enjoy a double privilege by reason of its upstream diversion, which latter is hostile and injurious to the appropriation of the plaintiff because it diminishes the quantity of water rightfully flowing into his diversion works.

5. Whatever we may say as to the restriction to a certain fixed quantity of water per second, the court did not undertake to change the standing of the defendant from that of a riparian proprietor to that of an appropriator of water. It adjudicated in an authoritative manner the rights of the respective parties, recognizing and regulating the riparian right of the defendant to irrigate his land by the natural operation of the stream at a point below the lands of the plaintiff. It declared the plaintiff to be a hostile appropriator ever since the years 1871 and 1873, thus establishing his right by prescription. The acts of the defendant, pretending to rely upon a void order of the water board, amounts to a continued trespass which equity is authorized to enjoin: *Chapman* v. *Dean,* 58 Or. 476 (115 Pac. 154); *Stotts* v. *Dichdel,* 70 Or. 86 (139 Pac. 932); *Central Oregon Irr. Co.* v. *Whited,* 76 Or. 255 (142 Pac. 779, 146 Pac. 815); *Talbot* v. *Joseph,* 79 Or. 308 (155 Pac. 184); *Burnes* v.

*Esch*, 87 Or. 1 (169 Pac. 512); *Boulevard Drainage System* v. *Gordon*, 91 Or. 240 (177 Pac. 956, 178 Pac. 796); and *Harvey* v. *Campbell*, 107 Or. 373, 438 (214 Pac. 348, 362).

6, 7. We are not unmindful of the provisions of Section 5764, Or. L., reading thus:

"All water used in this state for irrigation purposes shall remain appurtenant to the land upon which it is used; provided, that if for any reason it should at any time become impracticable to beneficially or economically use water for the irrigation of any land to which the water is appurtenant, said right may be severed from said land and simultaneously transferred and become appurtenant to other land, without losing priority of right theretofore established, if such change can be made without detriment to existing rights, on the approval of an application of the owner to the state water board. Before the approval of such transfer an inspection shall be made by the state engineer, his assistant, or a water master, who shall submit his report to the state water board, whereupon, by order, the board shall approve or disapprove such transfer and prescribe the conditions therefor. Such order shall be subject to appeal as in this act provided."

We remember that, as determined by the decree of adjudication, the title to the defendant's land was acquired prior to the passage of the Desert Land Act of March 3, 1877, to which reference has been made. The title of the defendant therefore carried with it the common-law riparian rights which have always been recognized in this state. The section above quoted is part of the act of February 24, 1909, being Chapter 216 of the Laws of Oregon for that year. It is entitled

"an Act providing a system for the regulation, control, distribution, use, and right to the use of water,

and for the determination of existing rights thereto within the State of Oregon, providing penalties for its violation and appropriating money for the maintenance thereof and declaring an emergency.''

The first section of that act says:

''Subject to existing rights, all waters within the state may be appropriated for beneficial use, as herein provided, and not otherwise; but nothing herein contained shall be so construed as to take away or impair the vested right of any person, firm, corporation, or association to any water.''

Again, in Section 70 of that act it is said:

''Nothing in this act contained shall impair the vested right of any person, association or corporation to the use of water.''

The opening declaration of the act was that waters within the state may be appropriated for beneficial use. The title of the act, so far as existing rights were concerned, limits the operation of the statute to ''the determination of existing rights.'' Thus controlled in the title of the act as well as by the terms thereof, the legislature could not and did not add to or subtract from the scope of then existing rights. It is enough to say of the particular riparian right under consideration that it is not included in the terms of that enactment so far as the right to change it is concerned. The law does not profess to or intend to grant to the board of control or to any court the right arbitrarily to take from anyone a riparian right which has its origin prior to the Desert Land Act and give him something else instead thereof. Neither did it profess to give one claiming riparian rights as known to the common law any greater privilege than he had before the passage of the Oregon Water Code. Possessed of a common-law riparian

right at the time of the passage of the legislation of 1909, litigating in that capacity in the adjudication of the right to the waters of Willow Creek, and bound by a decree recognizing and determining the right as a riparian right as the defendant was, the board of control had no authority to give the company what is to all intents and purposes the altogether different right of an appropriator at a point above the plaintiff's lands, especially where, by the law of nature, it was impossible to apply to the upstream land the riparian right inseparably annexed to the downstream tract. Injunction is the proper remedy, not only under general principles of equity but also by virtue of Section 5707, Or. L., prescribing that remedy in favor of any person injured by the action of the water-master.

The situation is not different from one in which any stranger would enter upon the stream above the holding of the plaintiff and undertake to divert water. The defendant is acting without valid authority and in violation of a fair construction of the decree adjudicating the rights of the parties. The decree of the Circuit Court is reversed and one here rendered enjoining the defendants, their agents, servants and employees from diverting any waters out of Willow Creek above the land of the plaintiff in derogation or diminution of the right in quantity of water allowed to him by the decree of the Circuit Court of June 6, 1916. The plaintiff is entitled to recover his costs and disbursements in this court and in the Circuit Court.      Reversed and Decree Entered.

Neither Mr. Justice Rand nor Mr. Justice McCourt participated in the hearing or decision of this cause.

Brown, J., concurs.

McBRIDE, C. J., and BEAN and COSHOW, JJ., concur in the result.

BEAN, J., Concurring in Part, Dissenting in Part. I concur in the opinion of Mr. Justice BURNETT as to the result of the case and to the holding that the water right of the plaintiff is superior and prior to that of the defendant. I dissent from the language in the discussion of the riparian right question which I understand is to the effect that a riparian proprietor of land patented by the United States prior to the passage of the Desert Land Act of March 3, 1877, has a right inseparably annexed to the soil, to have the water of a stream flow down to his land as it was wont to run, undiminished in quantity and unimpaired in quality. The question of riparian rights is fully discussed in the several opinions *In re Hood River,* 227 Pac. 1065, and it is unnecessary to further comment thereon.

In the opinion and decree *In re Willow Creek,* 74 Or. 592 (144 Pac. 505, 146 Pac. 475), in which case the construction of the decree is involved herein, the decree follows the general language of the opinion. In that case the Eastern Oregon Land Company claimed a riparian right to the use of water for about 7,000 acres of land through which Willow Creek passes. The company also claimed by virtue of appropriation, through three ditches constructed at different dates for tracts of land separate and distinct from the other land of the company. That company also claimed the right to have irrigated, on account of natural overflow, certain tracts of land aggregating 370 acres. At page 621 of the report it is stated, in effect, that the overflow of these lands was analogous to a crude manner of irrigation, much the same

as the method adopted by other irrigators on the same stream at an early date, when they cut ditches and allowed the water to flow into sloughs and low places and subirrigate their lands. It was there stated:

"It is unimportant how difficult or with what ease water can be appropriated for irrigation. It is tantamount to a beneficial use and is a valuable right which should not be ignored."

The company was awarded 3.65 second-feet of the waters of Willow Creek for the irrigation of 292.02 acres, described by subdivisions in the table with a priority date of 1867. This definite amount was allowed as an appropriation or *quasi* appropriation. As to the land which had been irrigated in such manner, it is stated in the decree as follows:

"That said Eastern Oregon Land Company is entitled to have irrigated the 292.02 acres of land on account of same having been heretofore overflowed in the amount and to the extent hereinbefore stated, subject to the rights since acquired by adverse user, and the like antagonistic to such rights; and water for said 292.02 acres shall be diverted from Willow Creek under the supervision of the Water Master, in such manner as he may direct."

The opinion suggested the installation of measuring devices for the amount of water awarded for the 292.02 acres, which would necessitate the construction of head-gates and ditches or flumes. The company has never availed itself of this privilege.

As to the remainder of about 7,000 acres of land of the company, as shown on page 627 et seq. of 74 Or., the company was denied the claim as a riparian proprietor to a "continuous flow" of the stream, and allowed "no additional use of water," that is, no water for irrigation in addition to its three appro-

priations by means of ditches, and 3.65 second-feet for the 292.02 acres.

In the decree mentioned, the plaintiff was allowed from the water of Willow Creek through certain ditches, 1.25 second-feet for the irrigation of 100 acres of land, with a priority of 1871, and 3.06 second-feet for the irrigation of 244.08 acres, with the priority of 1873.

Plaintiff's hostile use of the water for more than ten years prior to the decree adjudicating the water rights of Willow Creek renders plaintiff's right superior to the award of 3.65 second-feet of water for the defendant, according to the terms of the decree *In re Willow Creek*. This would be the same wherever the defendant might take the water out.

The award of a definite quantity of water to the defendant was not an allowance of a riparian right. It is settled in this state that a definite amount cannot be fixed by the decree of the court in advance as belonging to a riparian proprietor by virtue of his riparian right: *Caviness v. La Grande Irr. Co.*, 60 Or. 410 (119 Pac. 731).

Application of the defendant for a change of the plan of use does not show that "such change can be made without detriment to" the existing right of plaintiff: Section 5764, Or. L. As shown by Mr. Justice BURNETT's opinion, the defendant should not be permitted to have the benefit of the same water right in two places. The defendant should be enjoined from diverting any of the water out of Willow Creek above the lands of plaintiff to the detriment of plaintiff's award of a water right by the decree of the Circuit Court of June 6, 1916, by virtue of the award for its 292 acres.