Argued at Pendleton October 27; reversed December 15, 1931;
modified on petition for rehearing February 16, 1932

# NORWOOD *v.* EASTERN OREGON
# LAND CO. ET AL.

(5 P. (2d) 1057, 7 P (2d) 996)

*Bruce R. Kester,* of Ontario, and *J. C. Veazie,* of Portland (Veazie & Veazie, of Portland, on the brief), for appellant.

*Robert D. Lytle,* of Vale, for respondent.

BELT, J. This is an action to recover damages for an alleged wrongful diversion of irrigation water from Willow creek in Malheur county. Plaintiff is the owner of land on both sides of Willow creek and has a water right with a priority of 1871 as to part of his land and a priority of 1873 as to the remainder thereof. It is alleged that this land in its natural state is arid and nonproductive, but, with the aid of artificial irrigation, is capable of producing large crops of alfalfa and other perennial grasses. It is charged that the Eastern Oregon Land Company and its agent, the defendant A. D. Phelps, on or about April 21, 1919, wrongfully constructed a concrete dam above the property of the plaintiff on Willow creek and from May, 1919, to and including the month of November, 1924, thereby diverted all of the water from the lands of the plaintiff to his damage in the sum of $18,112.

The defendants denied the alleged wrongful diversion or that plaintiff had sustained any damage by reason of any act on their part. As an affirmative defense it is alleged as a bar to the present action that the plaintiff, in May, 1919, commenced a suit in the circuit court for Malheur county against the Eastern Oregon Land Company, its agent Ivan E. Oakes, and George Gombert, then water master for Malheur county, to enjoin the diversion of the waters involved in this action and, after issue was joined on the facts, offered evidence tending to show injury and damage to his premises and crops; that the circuit court dismissed this suit for an injunction but, on appeal to the Supreme Court, the decree was reversed and the cause remanded with directions to allow the writ enjoining the defendants therein from diverting any of the waters of Willow creek in derogation or diminution of the rights of plaintiff. This decree was entered on

March 5, 1923. The defendant asserts that the plaintiff in this equitable proceeding could and should have alleged any claim for damages sustained by reason of the alleged diversion of water and, not having done so, should be precluded from maintaining this action.

As a second affirmative defense, it is alleged that the rights to the use of the waters of Willow creek were adjudicated in a decree of the circuit court entered on June 6, 1916, on mandate of this court—wherein the defendant Eastern Oregon Land Company and the plaintiff were parties—and that their relative water rights were determined therein. It is alleged that, in this decree, the Eastern Oregon Land Company was adjudicated a right to 3.65 second-feet with a priority of 1867 for the irrigation of 292.02 acres of land, of which 88.68 acres were situated above the land of plaintiff and the remainder below; that this right was granted by reason of the overflow of said lands, but was "subject to the rights since acquired by adverse user and the like antagonistic to such rights" and that the water diverted from Willow creek should be under the supervision of the water master "in such manner as he may direct." It is further alleged that, on the 20th day of April, 1916, the State Water Board (superseded by the State Engineer), upon application of the Eastern Oregon Land Company, granted to it the right to change, to its lands located above those of plaintiff, the application or use of water thus adjudicated; that the Eastern Oregon Land Company is also owner of the Eldorado ditch whereby waters taken from the tributaries of Burnt river are turned into Willow creek and that more water was discharged into Willow creek than was diverted therefrom by reason of the construction of the dam of which plaintiff complains; that the dam was constructed with the approval and con-

sent of the State Water Board for the purpose of diverting such waters discharged by the Eldorado ditch and that which the defendant land company was entitled to take from the natural flow of Willow creek; and that it received only such water as was diverted under the supervision of the water master while acting in his official capacity.

As a third affirmative defense, it is alleged, "that as to all acts and things alleged in the complaint which were done or happened more than two years before the commencement of this action, the said action has not been commenced within two years after the cause of action accrued, or within the time prescribed by Chapter II of Title I, Oregon Laws."

The trial court sustained a demurrer to the three separate affirmative defenses and the cause was submitted to the jury under the issues as made by the complaint and the denials of the answer. The action was dismissed as to the defendant A. B. Phelps, upon motion for judgment of nonsuit. The jury returned a verdict in favor of the defendant H. G. Kennard as water master, but found against the defendant Eastern Oregon Land Company in the sum of $14,217.39.

■■ In this most difficult and complicated case, we will first consider the motion of defendant for a directed verdict. It is conceded that the plaintiff has a prior right over the land company to the natural flow of Willow creek. Many years before the company attempted to change the application or use of its water right to its land above that of the plaintiff, the latter, as an appropriator, had perfected his right by adverse user. When the dam was constructed the plaintiff instituted the suit for injunction and in that proceeding it was determined by this court (*Norwood v. Eastern Oregon Land Company*, 112 Or. 106 (227 P. 1111)),

that such diversion was an infringement upon the water right of the plaintiff. In other words it was, in effect, held that the land company was taking water from Willow creek to which it was not entitled. The contention that more water was discharged from the Eldorado ditch than was taken from the natural flow of Willow creek was involved in that proceeding. Yet defendant again urges the point and asserts that there is no evidence that it ever diverted any water adjudicated to the plaintiff. There is evidence that, prior to the diversion, the plaintiff had ample water from the flow of Willow creek for irrigation purposes and that he produced large and profitable crops of alfalfa hay; that after the dam was constructed in 1919 and the flow of Willow creek, excepting at flood stage, was completely diverted, the productivity of plaintiff's land materially and continually decreased until he was unable to raise profitable crops of hay; and that after the diversion was enjoined in 1924 and the plaintiff was again enabled to obtain water for irrigation purposes, large crops of alfalfa hay were produced. From this evidence we think the jury might reasonably infer that plaintiff sustained damage by reason of this wrongful diversion of water. The evidence tends to establish with reasonable certainty that the interference with the natural flow of Willow creek was the proximate cause of the damage. We deem it unnecessary to refer to the evidence offered by defendant in refutation of this claim of damage. Suffice it to say, a question was presented for the determination of the jury. It is not for this court to weigh the evidence.

But defendant strongly urges that it should not be mulcted in damages for having received only such water as was diverted under the supervision of the water master and that the jury having found in favor

of the defendant water master it necessarily and logically follows that the land company must be absolved from liability.

■■ Under the water code of this state, the water master is an administrative officer whose duty is to distribute water according to the decree adjudicating such water rights: *Squaw Creek Irrigation District v. Mamero,* 107 Or. 291 (214 P. 889); *Nault v. Palmer,* 96 Or. 538 (190 P. 346). He acts under the direction and supervision of the State Engineer. As stated by Justice BURNETT in *Brosnan v. Boggs,* 101 Or. 473 (198 P. 890), referring to the duties of the water master:

"His action must be founded upon some decree, and unless a party can show some such right, he can not be protected by the action of the water-master, who in turn can justify only on some established right."

The law, however, does not contemplate that he shall respond in damages for an erroneous construction of a decree determining water rights, provided he acts in good faith and within the scope of his statutory duties. If the rule were otherwise, a water master's work would, indeed, be a hazardous employment.

■ In the instant case it will be remembered that the water rights on Willow creek were adjudicated in 1916 (*In re Willow Creek,* 74 Or. 592 (144 P. 505, 146 P. 475)). The change in the application or use of water by the defendants to point of diversion at dam is not based upon the above decree, but upon an ex parte order of the State Water Board made on April 28, 1916. In the injunction suit this court, *Norwood v. Eastern Oregon Land Co.,* 112 Or. 106 (227 P. 1111), in commenting upon such order said:

"The acts of the defendant [Eastern Oregon Land Company], pretending to rely upon a void order of the water board, amounts to a continued trespass which equity is authorized to enjoin."

Further, the court said:

"The situation is not different from one in which any stranger would enter upon the stream above the holding of the plaintiff and undertake to divert water. The defendant is acting without valid authority and in violation of a fair construction of the decree adjudicating the rights of the parties."

Thus has the law of the case been declared. Giving effect to this decision, as the writer feels bound to do, it logically follows that the defendant can not justify by the acts of the water master under a void order. The legal status of the water master and the defendant land company is that of joint tort feasors. Plaintiff had the right to sue either or both for the damages sustained. It does not lie in the mouth of the land company to complain because the jury absolved the water master from liability. The plaintiff is the only one who could be heard on that subject. The case is not to be confused with those wherein the relationship of principal and agent existed. The water master is not an agent of the land company, but is an administrative officer of the state.

We are not unmindful of *Porter v. Small*, 62 Or. 574 (120 P. 393, 124 P. 649, 40 L. R. A. (N. S.) 1197, Ann. Cas. 1914C, 536). In that case the defendant Small availed himself of certain water rights awarded to him by the circuit court. On appeal the amount of water allowed to the defendant was materially reduced. The plaintiff thereupon commenced an action to recover damages for wrongful diversion of water. This court held there be no recovery as the defendant had a right to assume that the decree of the lower court was lawful and proper until reversed. *Porter v. Small,* supra, is unlike the instant case in that there was no final adjudication of the relative water rights prior to the

commencement of the law action. Furthermore, here the wrongful diversion was made pursuant to a void order.

■ Defendant excepts to the following instruction relative to the measure of damages:

"* * * I charge you that if you should find from a preponderance of the evidence that the plaintiff is entitled to recover damages in this case, then the measure of such damages is the reasonable cost of restoring plaintiff's land to its former condition, plus the depreciation of its rental value in the meantime."

It was the contention of defendant that the measure of damages was the diminution in the value of the land caused by the alleged wrongful diversion of the water. In the complaint it is alleged that as a result of being deprived of irrigation water, plaintiff's lands dried up, thereby "destroying plaintiff's said alfalfa and other perennial grasses and drying out and killing the roots thereof and destroying plaintiff's hay and pasture, to his great injury and to the damage of plaintiff's estate in said lands in the sum of Eighteen Thousand One Hundred Twelve Dollars ($18,112.00)." In support of these allegations relative to damages, plaintiff offered evidence in keeping with the rule of damages as declared by the court. Defendant asserts with much reason that the complaint seeks to recover for damages to the land while the proof pertains to damages to the crops and the cost of restoring the land to its former condition. However, we think defendant was not injured, as the rule announced by the court was more favorable to the defendant, in the light of the evidence, than it would have been had the court instructed in accordance with the theory of defendant. Mr. Oxman testified that the 344.8 acres of land be-

longing to plaintiff was damaged $100 per acre as a result of the diversion of water. Defendant offered no testimony on this phase of the case. The depreciation in the rental value plus cost of restoration of land was far less than the diminution in value of the land itself, if the evidence of Oxman is to be given credence. In our opinion the court stated the proper rule to be applied under the facts of this case. It is a rule in keeping with the policy of the law to afford fair and just compensation for the damages sustained.

 We are unable to agree with appellant that the decree in the suit for injunction precludes plaintiff from asserting a claim for damages in this action. It is well established that equity having assumed jurisdiction could have given complete relief by assessing the damages sustained, if plaintiff had put such matter in issue under the pleadings. However, the more pertinent inquiry is: Was plaintiff obliged to allege his claim for damages in the equity proceeding or else be estopped from thereafter making such claim? The best statement of the rule we have found is in *Cromwell v. Sac. County,* 94 U. S. 351 (24 L. Ed. 195), which was quoted with approval by this court in *First National Bank of Burns v. Buckland,* 130 Or. 364 (280 P. 331). Justice Field said:

"In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not

only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defenses never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, can not again be brought into litigation between the parties in proceedings at law, upon any ground whatever.

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action; not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

In *White v. Ladd,* 41 Or. 324 (68 P. 739, 93 Am. St. Rep. 732), it is said:

"The potency of a judgment as an estoppel concludes every fact necessary to uphold it and extends,

not only to matters actually determined, but to every other matter which the parties might have litigated and have had decided as incident to and essentially connected with the subject matter of the litigation, and every matter coming within the legitimate purview of the original action, * * *.''

The evidence relative to the issue of damages was not essential to the validity of the decree for injunction. The question of damages was merely incidental to the main relief sought in the equity proceeding. It was not necessarily involved therein. In the instant action there is a different claim or demand than was at issue in the injunction suit, hence the decree therein is no bar here.

*Smith v. McGowan,* 131 Or. 522 (284 P. 189), was an action to recover damages for wrongful interference with fishery rights. Prior thereto, the same parties asserted their fishery rights in a suit for injunction, but no claim was made for damages. In the law action the equitable proceedings had in the federal court were held not admissible to establish the plea of res adjudicata since, as the court said, ''such proceedings were separate and distinct from the action at bar, no damages being asked in the injunction suit.'' *Gust v. Edwards Co.,* 129 Or. 409, (274 P. 919), is not inconsistent with this ruling as that decision is based upon a statute which contemplates that in replevin the claim for possession of the property and that for damages for wrongful detention thereof must be maintained in the same action.

While the authorities are far from being in accord on the question of estoppel by decree (*Gilbert v. Boak Fish Co.,* 86 Minn. 365 (90 N. W. 767, 58 L. R. A. 735)) the rule to which this court has adhered is in keeping

with the weight of authority. See *Perdue v. Ward,* 88
W. Va. 371 (106 S. E. 874, 14 A. L. R. 539), and note
thereto wherein cases are collated.

Relative to the defense of the statute of limi-
tations, the respondent contends that this action is
based upon a trespass upon real property and, there-
fore, under the statute (§ 1-204, subd. 2, Oregon Code
1930), he is entitled to recover for all damages which
accrued within six years prior to the commencement of
the action. The appellant asserts that the action is tres-
pass upon the case and can be maintained only for
damages sustained within two years prior to the com-
mencement of the action (§ 1-206, subd. 1, Oregon Code
1930). The action was commenced June 11, 1925. Since
the plaintiff sought to recover damages which accrued
from May, 1919, to and including November, 1924, it
is apparent that the complaint was not subject to de-
murrer. Assuming that the theory of defendant is
correct, the statute is only a partial defense and would
not bar the action for damages sustained within the
two-year period. In our opinion the action is trespass
on the case and comes within the provisions of § 1-206,
subd. 1, of the Code relative to the statute of limita-
tions as a defense. The dam where the water was
diverted was three or four miles distant from the
land of the plaintiff. Therefore, in the commission of
the wrongful act, there was no entry upon his land.
The injuries which he sustained were not of the imme-
diate and direct nature which is essential in an action
for trespass. The damage to the crops and the lands
followed as a consequence of the wrongful diversion of
the water, but it can not be said that they were the
immediate and direct result of such wrongful act. As
stated in 2 Words & Phrases, First Series, p. 1442:

" 'Consequential damages' are those that follow
naturally, but indirectly, from a wrong act."

Also see 26 R. C. L. 930, wherein it is said:

"* * * an injury is a trespass only when it is immediate and directly occasioned by, and is not merely a consequence resulting from, the act complained of."

*Dalton v. Kelsey,* 58 Or. 244 (114 P. 464), is squarely in point and holds adversely to the contention of the respondent. In that case we note this significant language:

"Kelsey is not charged with interfering with the operation of the ditch upon plaintiff's land. It is imputed that he entered upon the ditch upon his own land and diverted the water so that it failed to reach the lands of plaintiff. In such contingency the remedy is by action on the case."—Citing Farnham, Water Rights, § 483.

Counsel for respondent has undertaken to distinguish this case from the one at bar, but we are frank to say that we are unable to follow him in that respect and can see no material difference between the cases. In support of the conclusion reached, also see *Miller v. City of Woodburn,* 126 Or. 621 (270 P. 781); *Drake v. Lady Ensley Coal, Iron & R. Co.,* 102 Ala. 501 (14 So. 749, 24 L. R. A. 64, 48 Am. St. Rep 77); 26 R. C. L., p. 998.

■ It is contended that the plea of the statute of limitations is not sufficient for the reason that it does not appear therefrom the date when the action was commenced. While there is some authority to sustain this contention (*United States Fidelity & Guaranty Co. v. Parker,* 20 Wyo. 29 (121 P. 531)), such holding is not in keeping with the better reasoned cases: 17 R. C. L. 992; 37 C. J. 1223; 13 Ency. Pl. & Pr. 214. The allegation of the answer that "as to all acts and things alleged in the complaint which were done or happened

more than two years before the commencement of this action, the said action has not been commenced within two years after the cause of action accrued, * * *" is one of fact and is not a conclusion of law. In support of such allegation, the defendant may well ask the court to take cognizance, as a matter of law, of the date when the action was commenced.

In view of the conclusion that this action is governed by the two-year period under the statute of limitations, and there is no segregation of damages as to the years in which they were sustained, it follows that the judgment must be reversed and the cause remanded for a new trial.

RAND, ROSSMAN and CAMPBELL, JJ., not sitting.

---

Petition for rehearing denied and former opinion modified
February 16, 1932

### ON PETITION FOR REHEARING
(7 P. (2d) 996)

BELT, J. We adhere to the opinion on original hearing, that the Statute of Limitations precludes the plaintiff from recovering damages other than for those sustained within two years prior to the commencement of this action. *Dalton v. Kelsey,* 58 Or. 244 (114 P. 464), is decisive.

However, after careful consideration of the record and the briefs submitted, we conclude there is merit in the contention of the plaintiff that this court should assess the damages and not remand the cause for a new trial. True, there was no segregation of damages in the verdict, for the various years in which loss was claimed, but, since the evidence relative to damages is uncontradicted and pertains to the differ-

ent years, it is believed that it can be determined here, with reasonable certainty, the amount of damages which should be awarded for the two-year period prior to the commencement of the action.

It has been adjudicated that plaintiff has sustained damages by reason of the wrongful act of the defendant company in depriving him of water for irrigation purposes. It is only the extent of plaintiff's loss that remains to be determined.

This controversy has been in the courts so many years that it has, no doubt, become vexatious to all parties concerned.

The direction in the original opinion that the judgment be reversed and the cause remanded is withdrawn. In lieu thereof, it is hereby ordered that the judgment of the lower court be affirmed in the sum of $5,000. In view of the substantial reduction in the judgment rendered in the circuit court, defendant is entitled to its costs and disbursements.

RAND, ROSSMAN and CAMPBELL, JJ., not sitting.