Argued November 7; reversed December 24, 1935

# CHAPMAN ET AL. *v.* GENERAL PETROLEUM CORPORATION OF CALIFORNIA

(52 P. (2d) 190)

*Robert R. Rankin*, of Portland (Wood, Montague, Matthiessen & Rankin, of Portland, on the brief), for appellant.

*Allison Moulton,* of Medford, for respondents.

BELT, J.  This is an action to recover damages resulting from the commission of an alleged tort.  At the conclusion of plaintiffs' case the defendant moved for a nonsuit and a directed verdict.  No evidence was offered by the defendant.  The motions of the defendant were denied and the cause submitted to a jury which returned a verdict in favor of plaintiffs for $1,500.  Defendant appeals.

A statement of the facts, in the light most favorable to the plaintiffs, is in order.  On June 27, 1929, the plaintiffs purchased a gasoline service station in Medford, Oregon, subject to a lease and agency agreement which their predecessors in title had made with the defendant General Petroleum Corporation of California.  Under the agency agreement, the plaintiffs were given the exclusive right to sell from such gasoline service station the petroleum products of the defendant.  The lease, duly recorded, provided that it could be cancelled for cause by either party upon ten days notice.  On February 6, 1931, the plaintiffs served on the defendant notice of their intention to cancel the lease.  The defendant, however, refused to recognize their right to cancel and sought to hold them under its terms.

It appears that, at such time, there existed between the major gasoline companies a so-called "code of ethics" or agreement to the effect that, if one of the companies had a lease and agency agreement with a retail gasoline dealer which the latter had breached, none of the other companies would sell gasoline to such dealer.

After plaintiffs served notice of cancellation of the lease—effective February 16, 1931—they were unable, except in a few instances, to purchase gasoline for sale under such name from any of the major companies, other than the defendant, and were obliged to buy from independent dealers. There is ample evidence tending to show that the "code of ethics" was entirely effective and that plaintiffs could not go out upon the open market and buy gasoline from major oil companies, although they attempted many times to do so. The situation became acute in December, 1931. The plaintiffs entered into an agreement with the Oregon-California Petroleum Company for the delivery of gasoline but this company, through pressure by the other companies, was soon forced to desist from making deliveries to plaintiffs.

On December 31, 1931, plaintiffs instituted suit against the defendant General Petroleum Company (1) to cancel lease and remove cloud from title; (2) recover accrued rent; (3) enjoin first-named defendant from interference with business; and (5) restrain the last-named company from breaching its contract. This suit was contested but it terminated wholly in favor of the plaintiffs. No appeal was taken from the decree.

While the above case was pending and until it was finally decided in September, 1932, the defendant herein refused to sell plaintiffs any gasoline or permit any of

the other major gasoline companies to sell to them. The boycott was in full force and effect.

Thereafter, on June 11, 1933, the plaintiffs commenced the instant action to recover damages for loss of profits sustained by them by reason of the alleged wrongful acts of the defendant during the period from the termination of the lease (February 16, 1931) to the time of the decree in the above suit (September 16, 1932). It is alleged that during the above period plaintiffs sold 150,000 gallons of gasoline and, by reason of the wrongful acts of the defendant, were damaged $10 for every thousand gallons which they purchased. In other words, plaintiffs aver that they could have saved one cent on every gallon purchased had they been able to deal with the major oil companies on the open market.

The theory of the plaintiffs as expressed in their complaint is that the defendant General Petroleum Company represented to the other major gasoline companies that it had a valid lease on record with the plaintiffs whereas, in truth and in fact, said lease had been terminated; that, as a result thereof, no major oil company other than the defendant would, under the "code of ethics", deliver gasoline to them; that the effect of such wrongful act by the defendant—acting in conspiracy with other major gasoline companies —was to compel plaintiffs to purchase gasoline from the defendant and independent dealers not selling gasoline of the major oil companies by name; that, had it not been for such wrongful acts on the part of the defendant, plaintiffs would have been able to purchase gasoline on the open market from such major companies at a price less than they were obliged to pay defendant and independent dealers.

The defense is based upon two major propositions: (1) That res adjudicata precludes plaintiffs from recovering damages in the instant action for the reason that they had an opportunity to adjudicate such matter in the suit instituted in December, 1931; that equity, having assumed jurisdiction, was able to grant complete relief and thereby avoid a multiplicity of suits; (2) that there is no evidence to support the finding of the jury that plaintiffs had sustained damage in the amount awarded, or in any sum.

■ The authorities in other jurisdictions, relative to the applicability of res adjudicata in such cases, are in conflict (see cases in note 14 A. L. R. 543), but in this state it is not an open question. In *Norwood v. Eastern Oregon Land Co.*, 139 Or. 25 (5 P. (2d) 1057, 7 P. (2d) 996), the identical point was decided adversely to the contention of the appellant herein. It will be remembered that the question of damages was not an issue in the equity proceeding. We see no need to restate the law.

■ The serious question is whether there is any evidence to support the finding of the jury that plaintiffs were damaged as alleged in their amended complaint. Plaintiffs, in order to establish damages, were obliged to introduce evidence tending to show (1) amount of gasoline purchased from the defendant or independent dealers during the period in question; (2) the price which they were obliged to pay for such gasoline; (3) the price for which plaintiffs could have purchased such gasoline in the open market from major oil companies, had they been permitted to do so. The difference between the price plaintiffs were obliged to pay and that for which they could have bought such gasoline in the open market would represent the damages sustained.

■ It is well established that uncertainty as to the amount of damages does not prevent recovery but uncertainty as to whether plaintiffs have been damaged as a result of the wrongful acts of the defendant does preclude recovery: *McGinnis v. Studebaker,* 75 Or. 519 (146 P. 825, 147 P. 325, L. R. A. 1916B, 868, Ann. Cas. 1917B, 1190). The precise question is whether the evidence in the instant case affords any reasonable basis upon which the jury could estimate the damages alleged to have been sustained.

■ There is evidence tending to show that during the period in question plaintiffs purchased 189,643 gallons of gasoline—127,000 gallons in 1931 and 62,643 gallons in 1932. The claim, however, is based upon only 150,000 gallons alleged to have been purchased from defendant and independent dealers "not selling gasoline of major oil companies by name". The evidence shows that the amount purchased from the defendant was 7,286 gallons. Plaintiffs also bought 110,000 gallons, which they assert was "independent gasoline", from one Owings who hauled it from California. The record further discloses that during the same period plaintiffs purchased 32,266 gallons from Sunset (Oregon-California Petroleum Corporation) ; 6,000 gallons from Richfield; and 2,200 gallons from Associated. These companies, however, are as alleged by plaintiffs "major gasoline companies". Hence, viewing the evidence in the most favorable light, plaintiffs have only shown that they were obliged to purchase 117,286 gallons from defendant and independent dealers. The verdict is based upon the purchase of 150,000 gallons. The complaint was drawn on the theory that plaintiffs were forced to purchase 150,000 gallons from defendants alone but, when counsel for appellant at the commencement of the trial stated it would be shown that plaintiffs purchased only

a comparatively small amount of gasoline from defendant, plaintiffs were granted permission to amend the complaint by adding the words "and independent dealers not selling gasoline of major oil companies by name". We are constrained to hold that there has been a partial failure of proof. The verdict based upon the forced purchase of 150,000 gallons can not be sustained.

We are not unmindful of the contention of plaintiffs that, while some of the gasoline was purchased from major oil companies they were "obliged to sell it as independent gasoline". Whether plaintiffs were prevented from selling the gasoline thus purchased under the name of any major oil company is beside the question. It is not the cause of action as alleged.

■ The record fails to disclose evidence affording any reasonable basis for the finding of the jury that plaintiff sustained damages in the amount awarded. Where is evidence of the market price of gasoline handled by major oil companies? Where is evidence of the price which plaintiffs were obliged to pay to the defendant and independent dealers? The following portion of the record shows the vague and indefinite testimony of the plaintiff W. O. Chapman relative to the above matter:

"Questions by the Court.

"Q. What I was going to ask you, Mr. Chapman, the one thing I haven't caught or haven't just got the point of in this testimony: you allege in your complaint here that if you had been dealing with these other oil companies on a market basis, you allege in substance if you had been able to deal with them on the regular market basis you would have got gasoline from them for one cent a gallon less than what you had to pay. I haven't just exactly caught on to your testimony regarding that. A. The very fact that I was able to buy gasoline from one of the major companies at that time

for a cent and a cent and a half under for a short time demonstrated to me if I was in a position to go out in the open market I could continue to do so.

\*       \*       \*       \*       \*

"Q. The question is—could you have gone into the open market and bought your gasoline for less money? A. All I had to do was to go to Richfield and they would have given it to me.

"Q. Do you know what the major oil companies' price was at that time? A. Well,—

"Q. And what they were allowing others? A. Yes, I did at that time, Your Honor, but it has been a long time ago; it was impossible to get into the courts, owing to the condition of the courts with other matters."

It will be observed from the above testimony that plaintiff said he knew "what the open market was during these periods" but, unfortunately, he failed so to state. His bare conclusion as to what Richfield would have sold and at what price will hardly suffice. On the issue of damages the jury was left to speculation and conjecture.

We feel that the plaintiffs, in the light of the record, have been damaged but, since there is no evidence affording a reasonable basis upon which to estimate the same, the judgment must be reversed and the cause remanded for a new trial.

CAMPBELL, C. J., and ROSSMAN and KELLY, JJ., concur.