Argued June 3, affirmed in part; reversed in part
September 25, 1968

# DAVIS ET UX, *Respondents, v.* GEORGIA-PACIFIC CORPORATION,
## *Appellant.*

445 P. 2d 481

*Clifford N. Carlsen, Jr.,* Portland, argued the cause for appellant. With him on the briefs were Fredric A. Yerke, Jr., and Jean P. Lowman, Portland, William T.

Hollen, Newport, and King, Miller, Anderson, Nash & Yerke, Portland.

*Nels Peterson,* Portland, argued the cause for respondents. With him on the brief were Donald H. Londer and Peterson, Chaivoe & Londer, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

## HOLMAN, J.

Plaintiff Veva Davis owns a residence in the city of Toledo. Subsequent to her occupation of the premises defendant commenced the operation of a pulp and paper plant in close proximity thereto. The plaintiffs, Mrs. Davis and her husband, testified the premises was rendered uninhabitable by the operation of defendant's plant because of the emanation therefrom of vibrations, offensive odors, fumes, gases, smoke and particulates which damaged the residence and plant life. Plaintiffs secured a judgment against defendant for both compensatory and punitive damages for trespass. Defendant appealed.

██ Defendant's first four assignments of error relate to the admission of evidence and an instruction to the jury which allowed the jury to consider whether the intrusion of fumes, gases, and odors upon the property in question constituted a trespass. Defendant contends such intrusions constitute a nuisance rather than a trespass because there was no direct physical invasion of the property. The traditional concept that a trespass must be a direct intrusion by a tangible and visible object as set forth in *Norwood v. Eastern Oregon Land Co.,* 139 Or 25, 37, 5 P2d 1057, 7 P2d 996

(1932), has been abandoned in this state. In *Bedell et ux v. Goulter et al,* 199 Or 344, 361, 261 P2d 842 (1953), this court held there was a trespass where harm occurred because of vibrations of the soil and concussions of the air caused by blasting. In *Martin et ux v. Reynolds Metals Co.,* 221 Or 86, 342 P2d 790 (1960), we decided that the deposit of airborne particulates upon another's land constituted a trespass even though the particulates were so small as to be invisible in the atmosphere. In so holding the following language was used at page 94:

> "If, then, we must look to the character of the instrumentality which is used in making an intrusion upon another's land we prefer to emphasize the object's energy or force rather than its size. Viewed in this way we may define trespass as any intrusion which invades the possessor's protected interest in exclusive possession, whether that intrusion is by visible or invisible pieces of matter or by energy which can be measured only by the mathematical language of the physicist."

Error was not committed by allowing the jury to consider an intrusion of fumes, gases, smoke and odors as a trespass.

■ The next five assignments of error relate to the refusal of the trial court to admit evidence and give instructions relevant to weighing the utility of defendant's conduct of its business and its efforts to prevent harm, against the seriousness of the harm, if any, suffered by plaintiffs. Traditionally, such a weighing process by the jury is one which is permitted in nuisance cases but not in those of trespass. In a trespass case the social value of defendant's conduct, its efforts to prevent the harm and other circumstances that tend to justify an intrusion cannot be considered by the

trier of the facts. See Faust, Strict Liability in Land-owner Cases, 42 Or L Rev 273, 276 (1963).

██ This does not mean, however, that a weighing process does not take place when a court decides whether a particular kind of an intrusion, if found by the jury to exist, is of such a nature that it should be classified as a trespass. The illustration used by Faust, *supra,* is the decision of courts that the normal operation of airplanes high in a property's airspace does not constitute a trespass. A similar kind of weighing process takes place when a court decides whether a trespass is privileged. Such classifications, however, are ones that are made by courts and not by juries. If the jury finds that an intrusion occurred which is of a kind that courts hold to be an unprivileged tres-pass, strict liability results. The jury is not allowed to consider the utility of the use to which defendant is putting his land or his efforts to prevent harm to plaintiff in deciding plaintiff's recovery. Therefore, it was proper in this case for the trial court not to allow the jury to consider the evidence and instruc-tions in question in deciding whether defendant should be responsible for *compensatory* damages.

We wish to make clear that no conclusion should be drawn from the above language that such a weigh-ing process is inappropriate in a court's consideration whether an injunction should issue to restrain a con-tinuing unprivileged trespass or whether a plaintiff should be left to his remedy at law for damages.

██ However, the jury's consideration was not limited to compensatory damages under the present pleadings because they included a request for punitive damages as well. Thus, the question is raised whether the evidence offered, which was relevant to the weigh-ing process, should have been admitted for the jury's

consideration in deciding the issue of punitive damages. Punitive damages are used for the purpose of determent when there has been a particularly aggravated disregard of the rights of others. *Noe v. Kaiser Foundation Hosp.*, 248 Or 420, 435 P2d 306 (1967). Certainly, in considering the degree of aggravation of defendant's actions, it was proper for the jury to be apprised of the utility of defendant's operations and its efforts, as compared with others similarly engaged, to prevent damage to surrounding properties. It was, therefore, error not to admit the evidence relating to the weighing process for the limited purpose of the jury's consideration of punitive damages and the verdict for punitive damages must be set aside.

Defendant assigns as error the court's refusal to direct a verdict in defendant's favor against the plaintiff, Mr. Davis. Defendant claims Mr. Davis has no protectible interest under the law of trespass because he is a stranger to the title which was in the name of his wife alone. Mr. Davis could have no interests which relate to the dignity and rights of ownership. His only rights are those of use and enjoyment of the property by the sufferance of his wife. In the present case plaintiffs seek damages for permanent injury to the property. Whether a claimant's interest is in the freehold or possessory only, determines his right to recover for permanent injury to the property or merely for an injury to use and enjoyment. 52 Am Jur 874, Trespass, § 49. Defendant stated in argument and plaintiffs did not deny that the parties agreed that the measure of damages was the diminution in the value of the property, if any, brought about by defendant's trespass. Having sought damages for permanent injury to the property, Mr. Davis was an improper party plaintiff because he had no interest

in the freehold. However, the court's failure to remove Mr. Davis as a party plaintiff did not constitute reversible error because the defendant could not have been damaged by it.

■ Defendant also contends that the court erred in allowing Mr. Davis to testify as to his opinion of the reasonable value of his wife's property, assuming the absence of defendant's mill. He was not qualified as an expert. Being neither an owner nor an expert, he should not have been permitted to testify. However, the testimony he gave was harmless because his answer to the request for his opinion of value was: "$18,000, it wouldn't sold for that." If the property could not have been sold for $18,000, it must have been obvious to the jury that the property wasn't worth that sum.

■ Defendant next contends the court committed error in admitting into evidence copies of three documents sent by the State Sanitary Authority to defendant. The documents were two letters and an interim report of the Authority, all of which were prepared and kept in the usual course of the Authority's business and were admitted under the provisions of ORS 43.370.① Defendant contends the documents contained irrelevant material and hearsay concerning charges by third persons that defendant's mill had caused damage to their property. There was much other material in each of the documents which was clearly admissible. An example of the material complained of was as follows: "A petition signed by sixty-two residents of

---

① "Entries in public or other official records, including books, data processing devices and computers, made by a public officer of this state or the United States in the performance of his duty or by another person in the performance of a duty specially enjoined by the law of either, are primary evidence of the facts stated."

Toledo was received  *   *   *   alleging that fumes and other air contaminants emanating from the Georgia Pacific Paper Company's mill had resulted in 'serious damage to dwellings in the area, particularly, metal being destroyed by rust, paint to be destroyed, shrubs and trees to be killed'  *   *   *.'" Another example was: "In a letter  *   *   *  from the Lincoln Taxpayers' League it was alleged that some pupils and teachers at the Toledo Junior High School had experienced physical illness from the fumes discharged from the Georgia-Pacific Paper mill in Toledo.  *   *   *" Presumably, because of the other information therein, the documents were introduced for the purpose of showing the jury the results of an investigation by the Sanitary Authority of the fallout from defendant's mill as well as the fact that defendant had been apprised of the conditions that existed and had been asked for certain action and information by a definite time by the Authority. The documents were not introduced for the purpose of proving that third parties claimed that the mill had damaged them. Therefore, the material complained of was not used as hearsay because it was not used to prove its truthfulness. However, neither was the material to which objection was taken relevant to any purpose for which the documents could have been introduced. It was immaterial and irrelevant surplusage which should have been deleted prior to introduction. However, we do not believe the material to be prejudicial to the allowance by the jury of compensatory damages, considering the admissible information in the documents which disclosed that the Authority's investigation found material emanating from defendant's plant to be in excess of the amount allowed by law, and that damage to foliage and houses was found in an area in close

proximity to the property in question. In addition, if prejudice were created by its admission it would have most likely manifested itself in the allowance of punitive damages which have been set aside.

■ Defendant argues that the statements in the documents to the effect that the fallout from defendant's plant was in excess of that allowed by law was not admissible under ORS 43.370 because it was an expression of opinion and not a statement of facts. We believe the argument to be inappropriate because we construe the statements as ones of fact and not of opinion. The administrative rules laid down by the Authority have the force of law and designate the amount of fallout that was permissible. The statements were to the effect that defendant was violating the law because the measurements by the Authority showed a fallout in excess of the allowable amount. If the head of the Air Quality Control Section of the Authority, whose documents were in question, had been called as a witness he could have testified to the results of the measurements made by the employees of the Authority under his supervision as well as to the legally allowable fallout rate.

■ Defendant next contends the trial court should have deleted any claims for general damage because of damage to paint, vegetation and health on the ground that the amount of damage claimed for each should have been alleged separately. No claim for damages for each of the enumerated items was made as such. They were merely an enumeration of the conditions caused by defendant which brought about the depreciation in value of the premises. The claim of error is of no merit.

■ Defendant also claims there was no evidence

upon which to base general damages because there was no testimony relative to the value of the property with plaintiff's mill in operation. It admits there was evidence of the property's value if the mill were not in operation. The evidence which defendant claims was missing was furnished by the testimony of its own expert witness who testified that the property was worth $4,750 with the mill in operation.

■ Defendant contends that the court erroneously submitted the question of special damages to the jury when there was insufficient pleading and proof of such damages. The jury awarded no special damages and, as a result, the question raised is of no consequence.

■ Lastly, defendant claims the trial court erred in failing to take from the jury the issue of punitive damages. Its sole argument is that this court's decision in *McElwain v. Georgia-Pacific*, 245 Or 247, 421 P2d 957 (1966), was in error. Defendant points out no distinction between the evidence relating to punitive damages in this case and that in *McElwain*. The same plant and conduct is concerned. Counsel in *McElwain* were identical to counsel in this case. A majority of this court sees no reason to retreat from its former position. An examination of *McElwain* will disclose a description of the conduct in question.

We have found prejudicial error relevant to punitive but not compensatory damages. Therefore, the judgment for compensatory damages is affirmed in favor of Mrs. Davis only and that for punitive damages is set aside unless she shall file with this court within 20 days a motion for another trial, in which instance the judgment of the trial court shall be reversed in its entirety and a new trial granted.

O'CONNELL, J., specially concurring.

For the reasons stated in my dissent in *McElwain v. Georgia-Pacific*, 245 Or 247, 264, 421 P2d 957, 965 (1966) I am of the opinion that punitive damages should not be imposed under the circumstances of this case. Inasmuch as this court has previously decided otherwise, I concur in the result.

DENECKE, J., specially concurring.

I specially concur in that portion of the decision which holds that there was evidence from which the jury could properly award punitive damages. A majority of the court in *McElwain v. Georgia-Pacific*, 245 Or 247, 421 P2d 957 (1966), with practically identical evidence, decided the issue was one for the jury although I expressed my personal view to the contrary.