Argued and submitted September 21, 1981, affirmed March 8,
reconsideration denied April 15,
petition for review allowed May 11, 1982 (293 Or 146)

PETERSON,
*Respondent,*

*v.*

LEBANON MACHINE WORKS et al,
*Appellants.*

(No. A7803-04034, CA 19040)

641 P2d 1165

Arden E. Shenker, Portland, argued the cause for appellants. With him on the briefs were Elizabeth A. Trainor and Tooze, Kerr, Marshall & Shenker, Portland.

Lyle C. Velure, Eugene, argued the cause for respondent. With him on the brief were David R. Vandenberg, Jr., Klamath Falls, and Malagon, Velure & Yates, Eugene.

Before Gillette, Presiding Judge, Young, Judge, and Holman, Senior Judge.*

HOLMAN, S. J.

---

*Holman, S. J., *vice* Roberts, J.

## HOLMAN, S. J.

This is an action for damages based on strict liability. Plaintiff was injured while using a machine he claims to have been dangerously defective. Defendants appeal from a judgment for plaintiff entered on a jury verdict.

Plaintiff was employed by Louisiana-Pacific Corporation and operated an edger in a sawmill. The edger, and the in-feed table which served it, had been purchased by Louisiana-Pacific's predecessor, Mazama Lumber Company, from defendant Lebanon Machine Works. Lebanon installed the apparatus as a single unit, and Mazama employed an electrician to wire it into the building's power source.

The in-feed table for the edger had a chain (called a jump chain) which operated on sprockets and was used by the operator to shift sidewise the slabs of wood on the table prior to running them into the edger. When not in use, the jump chain was below the level of the table. When sorting or shifting the slabs, the operator pressed a foot lever which raised the jump chain on its sprockets through a vacant space in the table. The rising motion activated an electric motor which, in turn, activated the jump chain, which moved the slabs from one side of the table to the other.

The apparatus had a control panel with large buttons on it which controlled its various parts. One was a master control switch which purportedly could cut off the electricity to the entire machine. It had a lock on it so that the power could not be inadvertently activated when the machine was not in use. The control panel was wired into the main power source on the side of the building some distance from the machine, where there was a breaker box with a switch, which also could de-activate power to the mechanism.

It was plaintiff's duty, at the end of his shift, to clean the machine of sawdust and shavings by air blasting and washing. Preparatory to cleaning his machine, plaintiff locked out the power with the master control switch on the panel. While cleaning, he noticed that the jump chain had come off a sprocket in the slab shifting mechanism on the in-feed table. He pulled on the chain in order to find the

master link which was specifically made to be disconnected in such situations so that the chain could be threaded over the sprocket. The pulling motion raised the apparatus upward, the motor was automatically activated by the motion and plaintiff's hand was run between the chain and a sprocket, mangling the hand. On subsequent examination, it was found that the jump chain had been "hot wired" around the control panel and, therefore, the power to it had not been turned off at the control panel by the master control switch.

■    Defendants claim that the evidence is deficient, because there is no proof that the mechanism was dangerously defective. They claim that there is no showing that any other method of installing the machinery would have been equally effective and practical, citing *Wilson v. Piper,* 282 Or 61, 69, 577 P2d 1322 (1977). Some things are self-evident. That the jump chain could have been wired through the control panel is one of them. Also, there was expert testimony that the machine was defective, because it performed as plaintiff described at the time of his injury.

■ ■    Defendants also contend that there is no showing that the defect was the cause of plaintiff's injuries, because he had been instructed and, therefore, knew that he was supposed to disconnect the power source on the wall of the building before repairing the machine. Defendants' contention is not clear, but it sounds as if they are contending that plaintiff's negligence in not following instructions was the sole cause of the accident. Assuming that plaintiff did disregard such an instruction, there is no evidence that plaintiff knew that the portion of the machine that injured him was wired around the control panel and, therefore, that he knew of the alleged defect and the *particular* risk it involved. He could voluntarily encounter only a danger of which he knew. Voluntarily encountering a known risk is the only kind of contributory negligence which is relevant in a product strict liability case. *Johnson v. Clark Equipment Co.,* 274 Or 403, 409, 547 P2d 132 (1976); *Findley v. Copeland Lumber Co.,* 265 Or 300, 305-06, 509 P2d 28 (1973).

■    Defendants further contend that plaintiff failed to prove that at the time he was injured the equipment was in

substantially the same condition as it was when sold by Lebanon to Mazama. The principal dispute in the evidence concerns who furnished and wired the particular part of the control panel which contained the master control switch. The electrician who was hired by Mazama to connect the mechanism to the power source on the wall testified that he furnished this part of the panel and wired it in. However, the millwright at the mill, who had been there from the installation of the equipment until plaintiff's injury, testified that he unloaded the truck that transported the mechanism from Lebanon to the mill and that that particular part of the panel came with it. He further testified that there was no material change in the mechanism up to the time plaintiff was injured and also testified originally to facts from which it could be inferred that it was probable that he would have known of any change. He testified that he thought plaintiff was mistaken when plaintiff told him he had turned the power off at the control panel at the time he was injured.

The millwright also tested the equipment and found, to his surprise, that the jump chain mechanism was wired around the master control switch on the control panel. He further stated that all the wires were on the equipment when it was delivered and that after the machine had been wired to the primary power source on the side of the building by the electrician hired by Mazama, Lebanon's workmen tested the machine. This evidence was sufficient to take the case to the jury on the question of whether it was installed by Lebanon in the same condition in which it was found at the time of the injury.

■■ Defendants contend the trial court erred in failing to withdraw from consideration by the jury the following allegation of defectiveness:

"In manufacturing, designing and installing equipment without adequate guards on the chain drives and sprocket to protect workman working thereabout."

The only evidence which plaintiff claims justifies the submission of this allegation is:

"Q. And can you tell the jury then the — you got around to the edge of the chain and what did you start doing?

"A. I starting turning the chain around. You couldn't the whole chain wasn't visible from one position, so I started turning it around and about — I had moved it probably a foot or so and —

"Q. How were you moving it?

"A. I just kind of pulled on it with — with my hand because it was — it was — it wasn't moving too awfully free, so I had a pretty good grip on it, just kind of hand over hand kind of a motion.

"Q. Does that chain just run through space or is it in a raceway?

"A. It sits in a raceway between two kind of guide cables that come up along the side except when it's off the sprocket on the end.

"Q. What's that raceway made out of?

"A. I think it's corregated or something like that.

"Q. The chain runs in that?

"A. Yes.

"Q. And where was your hand pulling this chain — where was it in relation to that raceway?

"A. It was between the raceway and the chain itself.

"Q. Okay. And you say you pulled the chain to you about a foot and a half?

"A. Yeah.

"Q. And then what happened?

"A. Well, it — you know, the motor sort of got started there and my hand was underneath it and it just kind of took it round, right around the end of the bar. And, when it got — when it got free, when it was back out into the open space there, the chain was — when it left the back side of the sprocket, I could get my hand out of there and it happened about just in a split second.

"Q. And that motor started by itself?

"A. Yes, sir.

"Q. And you had the button in off?

"A. Yes, sir."

It is extremely difficult to see how any guard would have prevented the injury, considering the task plaintiff was performing. There is *no* evidence that a guard existed which could have prevented the injury, what it would have been like or, if one were possible, whether it would have been practical and would not have impeded the use of the jump chain.

The allegation concerning the lack of a guard played no part in the jury's determination. It was a non-issue. There was no evidence concerning it. Plaintiff did not argue the allegation to the jury. Other than an enumeration of it among the allegations of defectiveness, it was never mentioned in instructions. It is a mystery why the specification was ever submitted. That this is true is inadvertently demonstrated by defendants' brief when they say:

> "Not only did plaintiff fail to prove a 'defect,' plaintiff failed to prove that his injuries were caused by a defect (much less a dangerous one). *The only defect claimed by plaintiff was the failure to wire the equipment in the manner suggested by the testimony of Mr. Epps. * * *"* (Emphasis supplied.)

A case need not be retried with all the attendant time and expense to the public and the litigants when the error played no part in the ultimate disposition of the case. *Escobedo v. Ward,* 255 Or 85, 95, 464 P2d 698 (1970). The time has passed when cases should be reversed solely for technical error.

■    Defendants also contend that the following allegation of defectiveness should have been stricken on their motion:

> "[I]n manufacturing, designing and installing the equipment and machinery without adequate labeling on the control panels to warn workman operating or working about said equipment that portions of the equipment would remain electrically activated even though the equipment was turned off at the operator's master control panel."

Defendants argue that plaintiff failed to meet his threshhold burden to prove defectiveness and, therefore, there was no duty to warn. We have previously disposed of this contention. There was evidence that there was no labeling on the machine warning users that the jump chain remained activated although the master control switch on the panel was off. Therefore, there was sufficient evidence to submit the allegation. Defendants make other arguments which we consider of no substance.

■ ■    Defendants next contend that the trial court erred in instructing the jury, as requested by plaintiff, concerning the provisions of various safety rules promulgated in

the National Electric Code and by the Workers' Compensation Board. It also charges as error the failure of the trial court to give defendants' requested instructions concerning provisions of the Occupational Safety and Health Act. Defendants' exception to the instructions given were inadequate as a basis for the trial court's correction of any error and were insufficient. Defendants' requested instructions, which were not given, were based upon an act which did not go into effect until long after the machinery in question was put into the stream of commerce.

■ Defendants further claim that error was committed when the trial court refused to allow the amendment of their answer at the close of testimony. At that time plaintiff moved to withdraw a negligence count and to continue on the remaining strict liability count only. This motion was allowed. Defendants then moved to amend their answer by pleading the defense of comparative negligence by way of assumption of a known risk, the only kind of negligence which is a defense to a strict liability case. *Findley v. Copeland Lumber Co., supra.* Defendants had pleaded only ordinary contributory negligence. If the jury were to find the equipment defective, as it did, it had to be on the basis that the jump chain was wired around the switch on the control panel. There is no evidence that plaintiff knew of this defect, and he could not be negligent for encountering an unknown risk. *Johnson v. Clark Equipment Co., supra.* There was no evidence to sustain or justify the filing of an amended answer.

■ The next assignment of error is the giving of the following instruction:

"A product may be shown to be defective if at the time of its design, manufacture or installation it contained a component part which could cause its failure to perform safely under circumstance which from common knowledge *the average user reasonably could have expected* the assembled and installed product to perform safely." (Emphasis supplied.)

The instruction, of course, is not applicable after the decision in *Phillips v. Kimwood Machine Co.,* 269 Or 485, 492 n 16, 501, 525 P2d 1033 (1974). *Phillips* was decided prior to the trial of this case. The instruction was based on what was said in *Markle v. Mulholland's, Inc.,* 265 Or 259, 266,

509 P2d 529 (1973), which was supplanted by *Phillips.* However, again, defendants' exception to the instruction was not of sufficient specificity and clarity to apprise the trial court of the defect. In any event, it was not prejudicial, because the *Phillips* definition of defect was also given by the trial court. See a discussion of the two tests in *Phillips,* 269 Or at 493.

■■■ The last assignment of error is the trial court's failure to give one of defendants' requested instructions:

"The manufacturer or supplier of equipment is not responsible for injuries to workmen if the manufacturer or supplier provided reasonably adequate instructions for the safe operation of the equipment to the original mill owner for whom the manufacturer or supplier worked. The manufacturer or supplier is then entitled to rely upon the mill owner or employer to provide adequate and proper safety instructions to its employees who operate the equipment."

We are doubtful that the instruction was a correct statement of the law, but there is no necessity to decide the question because there was no evidence from which it could be found that the defendants ever told anyone that the jump chain mechanism was wired around the master control switch on the panel. There could not be adequate instructions for safe operation in the absence of this information. Instructions to plaintiff to turn off the power at the take-off on the wall of the building were not adequate when the switch on the panel would appear to be equally efficacious in shutting off the power to the machine.

The judgment of the trial court is affirmed.