# HANSON,
## *Respondent,*

*v.*

# WADE et ux,
## *Appellants.*

## (No. 77-8-396, CA 19026)

643 P2d 417

Gerald R. Hayes, Portland, argued the cause and filed the brief for appellants.

Michael J. Kavanaugh, Portland, argued the cause for respondent. With him on the brief was Lekas & Dicey, Portland.

Before Buttler, Presiding Judge, and Warren and Richardson, Judges.

WARREN, J.

## WARREN, J.

This is an action for damages for trespass for discharging sewage, effluent and bath and sink water on plaintiff's property. The case was tried before a jury, which returned a verdict of $10,000 general and $20,000 punitive damages against defendants Wade, who appeal from the resulting judgment. The jury also returned a verdict in favor of defendant Lane.

Because plaintiff had a jury verdict, all conflicts in the testimony are resolved in his favor; he is given the benefit of the favorable evidence as well as of all inferences reasonably drawn from that evidence. *Hansen v. Bussman,* 274 Or 757, 759, 549 P2d 1265 (1976).

Defendants Wade[1] were the original owners of all the property involved in this action. They constructed two houses on the property, and Mr. Wade was present when the septic systems for both houses were installed. Defendants sold the house on the south half of the property (the "Hanson house") in 1965, and plaintiff acquired it in 1974. They retained ownership of the house on the north half of the property (the "Wade" house) until 1977, when it was sold to Lane.

Defendants had problems with the septic system of the Wade house in 1967, which they corrected by laying pipe to carry overflow sewage and effluent off their property. Plaintiff first made inquiries about the septic systems of the houses in the fall of 1974, after his tenant moved out complaining that there was an intolerable smell in the house. At that time, Mr. Wade told plaintiff that the drainfield for the Hanson house was located directly west of the house, where a garden was located. In 1975, plaintiff built a barn on his property and, as a result of the construction, found his drainfield to the southwest of his house, rather than in the location described by Mr. Wade. In 1977, while installing a fence along the boundary between his property and the Wades', plaintiff discovered effluent in the postholes. When he informed Mr. Wade that

---

[1] Hereafter, "defendants" refers only to defendants Wade. Defendant Lane is not a party to this appeal.

this had occurred, he was told that that was the location of the Hanson drainfield.

Complaints about the smell of sewage continued. In response, the Department of Environmental Quality tested the septic system at the Wade house in 1977 and found that dye put in the toilet surfaced on the Hanson property. Repairs were made on the system and drainfield by Mr. Wade and Mr. Lane, but tests performed in 1978 and 1980, also in response to complaints, showed that effluent from the Wade system was surfacing on the Hanson property, in the garden and under the house.

In 1978, while digging a drainage ditch, plaintiff discovered a pipe, running from the north, that was discharging sewage onto his property near the property line. Another pipe was found, also running from the direction of the Wade house, which discharged effluent into plaintiff's garden. The pipe near the property line was blocked, and that, along with the drainage ditch, lessened the smell in plaintiff's house until 1979, when Mr. Lane dug a drainage ditch on the Wade property. At that time, the smell of sewage that had pervaded the Hansen house almost continuously from 1974 increased.

In his complaint, plaintiff claimed general damages for the invasion of his property and mental anguish suffered as a result. He also claimed that the acts complained of were done wilfully, wantonly, maliciously, intentionally and with knowledge of their harmful consequences, thus giving rise to liability for punitive damages. The jury returned the verdict described above.

■    Defendants first assign as error the denial of their motion to dismiss and their motion for a directed verdict. They argue that plaintiff's complaint alleged only an intentional trespass, if any, there being no allegation of negligence or ultra-hazardous activity, and that there was no evidence to support a finding that they had intentionally caused sewage to flow onto plaintiff's land. We have reviewed the complaint[2] and the record and conclude that

---

[2] In his complaint, plaintiff alleged a "continuing trespass" in one paragraph and alleged in another paragraph that the trespass was done intentionally, praying for punitive damages.

plaintiff pleaded an intentional trespass and that there was evidence from which a jury could find that defendants ran pipes from their septic system onto plaintiff's property when their own system began failing and, therefore, that they intentionally trespassed on plaintiff's property. Defendants' motions were properly denied.

■ Defendants' second assignment relates to an allegation in plaintiff's complaint that defendants discharged bath and sink water onto his land. They contend that this allegation should have been stricken, because there was no evidence that bath and sink water was discharged onto plaintiff's property. We agree. From this record, we cannot say the error was harmless. *Cf. Peterson v. Lebanon Machine Works,* 56 Or App 378, 641 P2d 1165 (1982) (submission of unsupported allegation not argued or instructed upon was not prejudicial). Not only was the allegation submitted to the jury, it was argued by plaintiff's counsel (albeit briefly), and the court specifically instructed the jury concerning defendants' claimed liability for the discharge of "kitchen, bath and laundry wastes" onto plaintiff's property. We decline to speculate as to what, if any, consideration the jury gave to this allegation in reaching its verdict and in awarding general and punitive damages. The judgment is reversed, and the case is remanded for a new trial. *Pavlik v. Albertson's Inc.,* 253 Or 370, 375, 454 P2d 852 (1969).

We will discuss defendants' other assignments of error, which are likely to arise on retrial.

■ Defendants next maintain that there was no evidence to support punitive damages and that this issue should not have been submitted to the jury. Defendants' argument is based on their contention that there was no evidence to support a finding of intentional trespass. As discussed above, we have concluded otherwise.

In *McElwain v. Georgia-Pacific,* 245 Or 247, 249, 421 P2d 957 (1966), the Supreme Court held that, where there was evidence of a wrongful act done intentionally with knowledge that harm to another would result, the question of punitive damages was for the jury. This court, in *Senn v. Bunick,* 40 Or App 33, 42, 594 P2d 837 (1979),

held that, where the defendants could have been found to have decided that to improve their land it was necessary to trespass on the plaintiff's property and did so without consideration of the plaintiff's rights, it was within the jury's province to award punitive damages. Here, the jury could have found that defendants chose to solve their septic system problems by dumping sewage onto their neighbor's property. As in *Senn*, the question of punitive damages was properly submitted to the jury. *See also 2-D's Logging v. Weyerhaeuser*, 53 Or App 677, 689, 632 P2d 1319, *rev den* 292 Or 109 (1981).

■    Defendants also contend that the jury was improperly instructed that, if it found defendants liable, it could award damages for the period from 1974 to the time of trial. Defendants contend that they sold the property in 1977, and, therefore, they should not be liable for damages after that date. This court has implied that a former owner of property that is the source of an alleged continuing trespass is not liable for damages occurring after he has conveyed the property. *See Denora v. Fischer*, 55 Or App 448, 638 P2d 490 (1982); *but see Restatement (Second) of Torts*, § 161, comment c (1965).[3] In *Denora*, the action was not commenced within six years after the conveyance, and the plaintiff's action was therefore entirely barred as to the former owners. Here, defendant's conveyance was made in June, 1977. Although, under *Denora*, defendants are correct, they nonetheless remain liable for all damages occurring within the period of the statute of limitations but before the conveyance. *See Norwood v. Eastern Oregon*

---

[3] *Restatement (Second) of Torts*, § 161, comment c (1965) states, in pertinent part:

"Since the conduct of the actor in placing the thing on the land is tortious, his responsibility for its presence on the land continues, * * * although through subsequent conduct on his part it has now become impossible or impracticable for him to terminate the intrusion on the other's land. In this respect, the liability of one who has tortiously placed a thing on another's land is more stringent than the liability of his transferee * * *.

"Illustration: [A constructs a dam which backs up water on B's land.]

"2. * * * after building the dam, A transfers to C his interest in the land on which he had erected the dam. Although A cannot now demolish or reduce the level of the dam or lower the flood gate without committing a trespass against C, he is nevertheless under liability to B for the continuance of the flooding of B's land."

*Land Co.,* 139 Or 25, 37, 5 P2d 1057, 7 P2d 996 (1932). The burden to segregate any damages which occurred beyond the statute of limitations or after the conveyance is on the defendants. *Furrer v. Talent Irrigation District,* 258 Or 494, 519, 466 P2d 605 (1971).

Reversed and remanded for new trial.[4]

---

[4] Defendants also assign as error the trial court's failure to submit punitive damages against defendant Lane. Plaintiff did not cross-appeal from the judgment in favor of Lane, and we need not address this question. Lane will not be a party to the new trial. *Morey, Administratrix v. Redifer et al,* 204 Or 194, 195-96, 264 P2d 418, 282 P2d 1062 (1955).